## SOUTHWESTERN GAS & ELECTRIC CO. v. LAIN et al.

### No. 10625.

Circuit Court of Appeals, Fifth Circuit.

Dec. 10, 1943.

George Prendergast, of Marshall, Tex., for appellant.

Hugh Carney and Howard A. Carney, both of Atlanta, Tex., and Chas. B. Wallace, Walace Hawkins, and Jerome Chamberlain, all of Dallas, Tex., for appellees.

Before HUTCHESON, McCORD, and WALLER, Circuit Judges.

McCORD, Circuit Judge.

Charley J. Young, while in the employ of Magnolia Petroleum Company in an oil field in east Texas, received an electrical shock which resulted in his death.

The death of Young resulted in a court action and the important facts surrounding his death are these: Magnolia Petroleum Company owned and operated oil wells on certain leased property in east Texas; after its wells were in operation it constructed oil tanks in which to treat crude oil by forcing steam into the tanks so as to remove dirt and basic sediment from the oil.

On a certain day in January 1941 Charley J. Young with a fellow laborer, climbed to the top of one of the tanks by a stairway which was erected on the outside of the tank, and set about disconnecting a metal pipe which was called a "riser" and which was connected and protruded through a "thief hatch" on top of the tank into the tank. The metal riser was twenty feet in length and one and one-fourth inches in diameter; fire had broken out on the property and gas escaping from the open thief hatch was highly inflammable and invited fire hazard and was therefore ordered closed; the top of the tank was oval, studded with bolts and a vent pipe extended two feet above the top, and a hatch opening also extended into the top.

Several months after Magnolia Petroleum Company entered upon its lease, Southwestern Gas and Electric Company erected its line of wires across the leased property of Magnolia Petroleum Company near unto and adjacent to the oil tank on which Young worked at the time of the accident; the wires of Electric Company extended almost directly above the tank. It was shown without dispute that the wires of Electric Company had not been erected as contemplated in the first survey and according to the blueprints, but were erected much closer and in such proximity to the tank that the head of a man who was five feet nine inches in height, standing on top of the tank, would have been between eleven and thirteen feet from the nearest wire; the National Electric Safety Code, Bureau of Standards of the United States Department of Commerce was cited by both parties; the wires carried a voltage of 11,000 volts between conductors and 6,900 volts between one wire and the ground; there was a sharp conflict in the evidence as to whether the wires were placed too near the tank and fire wall for safety; Electric Company had knowledge of the tank in question before it erected its lines; knew that Petroleum Company constantly directed and required its employees to go upon the top of the tank to perform work which was necessary in and about its business. It was stipulated and agreed that the electric line in question was patrolled by line walkers of the Electric Company frequently and periodically; it gave no notice to the Petroleum Company of the kind and character of electricity transmitted over the lines, and the Electric Company received no permission from the Petroleum Company to construct, operate and maintain the line at, near, or over its tank battery in question; Petroleum Company knew the electric line was so located and made no complaint or objection as to the erection or location of the line to the Electric Company; no warnings were given to the servants or employees of the Petroleum Company of the danger of the wires carrying the high voltage, and no warning signs were erected or maintained at or about the electric line or near the tank battery.

Charley J. Young and his fellow laborer spent about ten minutes in disconnecting the riser and while they were engaged in withdrawing it from the tank Young's helper cleansed it of oil and Young then took possession of the riser and while he was

144

attempting to balance it for the purpose of lowering it to the ground one end came in contact with the lethal wire and he was electrocuted and killed.

Charley J. Young left surviving him a wife, Mrs. Linnie Paulk Young, and his mother, Mrs. Alma Ethel Young; as the result of the death of Young, Safety Casualty Company, who was insurance carrier for Magnolia Petroleum Company, paid to Mrs. Linnie Paulk Young the sum of $6,-015.54, as workmen's compensation insurance; Mrs. Alma Ethel Young, the mother, Mrs. Linnie Paulk Young, the wife, who had later married E. F. Lain, her husband, and Safety Casualty Company, who by statute had been subrogated to any claim of Mrs. Linnie Paulk Young, filed suit against Southwestern Gas and Electric Company seeking damages for the death of Charley J. Young, which they alleged was the result of negligence of the Electric Company.

The plaintiffs alleged the negligence of defendant: (1) In erecting and maintaining its high voltage line too near the tank, too low at a point where workmen might be, between the fire wall and the tank battery, and in interfering with and obstructing the easement previously dedicated to and appropriated by Magnolia Petroleum Company; (2) failing to install and maintain in proper working order circuit breakers, relays and ground detectors; (3) failing to maintain proper warnings, and to have protection strips, nets or guards on the stretch of the high line nearest the tank battery. Defendant denied liability and further charged by way of defense contributory negligence of deceased Young.

The court in charging the jury narrowed the issues to the proximity of the high powered voltage line to the battery tank and fire wall, and the failure to install and maintain warnings, circuit breakers, etc. at and near the battery tanks, and excluded from the jury wanton or willful misconduct on the part of defendant.

The jury returned a verdict for Mrs. Linnie Paulk Young Lain in the sum of $6,250, and for Mrs. Alma Ethel Young $2,500, and upon the verdict entered judgment in favor of Safety Casualty Company for $6,015.54, for Mrs. Linnie Paulk Young Lain $234.46, and for Mrs. Alma Ethel Young $2,500. Defendant appeals.

■ There was evidence from which the jury was warranted in finding that defendant had erected its wires in dangerous proximity to the battery tank in question; the defendant being a second comer knew or ought to have known that employees of Petroleum Company constantly went upon the top of the tank battery to perform labor and would come in close contact with its high voltage wires, the evidence being without dispute the jury was further warranted in finding that defendant had failed to provide warning signs or such breakers as would protect those coming in contact with its wires. A clear-cut issue was made for the jury on the question of negligence. Oil Belt Power Co. v. Touchstone, Tex.Civ.App., 266 S.W. 432, 439; Roundtree v. Post, 5 Cir., 134 F.2d 340; American Employers Insurance Co. v. McLean, 5 Cir., 127 F.2d 275; Tri-State Transit Co. of Louisiana v. Grier, 5 Cir., 127 F.2d 719; Southwestern Greyhound Lines v. Buchanon, 5 Cir., 126 F.2d 179; Teche Lines v. Boyette, 5 Cir., 111 F.2d 579.

■■ Only his helper on the tank at the time of the death of Young was able to testify as to what occurred: "Well, he didn't know the wire was up there and I didn't, the only reason I am sitting here, I didn't throw the pipe out." Moreover, nothing had been given these two laborers in the way of notice of danger from wires above them. It is manifest that in performing his duties on top of the tank, it was necessary for Young to keep his eyes constantly upon the cone-shaped top to maintain his footing; a sixteen foot drop awaited an indiscreet step and he was required to remove the twenty foot metal riser which was connected up and where gas was escaping and as fire approached the tank. Concern for this laborer was the duty of defendant when it erected its line. There can be no contributory negligence where there is no knowledge of danger. Contributory negligence was submitted to and passed upon by the jury. Texas Utilities Co. v. Dear, Tex.Civ.App., 64 S.W.2d 807, 811; Boaz v. White's Auto Stores, Tex.Sup., 172 S.W.2d 481.

We are not called upon to pass upon wanton or willful misconduct.

■ While as above stated, we are of opinion that the judgment should be affirmed, we by no means hold that "This is a frivolous appeal sued out for the sole purpose of vexatious delay". If we were otherwise disposed to take that view, and we are not, the earnestness with which ap-

pellant has briefed and argued its case in a brief of 139 printed pages would prevent our doing so. The rule was designed for and has application to appeals of a character and color wholly different from this. Its language has been carefully drawn, it may not be made the instrument of mere reprisal.

We find no reversible error in the record and the judgment is affirmed.