## HOUSTON LIGHTING & POWER CO. v. TABER.
### No. 12083.

Court of Civil Appeals of Texas. Galveston.
May 19, 1949.

Rehearing Denied June 9, 1949.

340

Baker, Botts, Andrews & Parish, of Houston, and Wigley, McLeod, Mills & Shirley, of Galveston, attorneys, W. R. Brown, of Houston, and V. W. McLeod, of Galveston, of counsel, for appellant.

Bleecker L. Morse and Markwell & Stubbs, of Galveston, for appellee.

CODY, Justice.

This is an appeal from a judgment for $30,000, recovered by Mrs. Elsie Taber against appellant for the death of her husband, which occurred when he came into contact with an electric service wire that had blown down during the afternoon of August 24, 1947, upon premises occupied as a residence by appellee and her deceased husband, along with appellee's aged parents and a brother, and which is located at 1317 Avenue D, in the City of Galveston, where appellee had lived with her parents since 1919. The deceased was a seafaring man, and appellee had been married to him since 1937.

Appellee pled that appellant's service wires, which ran from the Taber residence to the pole in the alley back of, or south of, the Taber residence, were under the sole control and management of appellant, and were "old and worn out and defective in some manner unknown to this plaintiff", and appellee pled that this constituted negligence, and was a proximate cause of the wire breaking and falling upon the Taber premises, and of the death of the deceased.

Appellant specially excepted to appellee's general allegation that the service wires were defective in some manner unknown to her. In that connection it should be noted that shortly after Taber was electrocuted the appellant replaced the wires with new ones, and that appellee got possession of the wires which were so removed and retained such possession until said wires were introduced in evidence in this case. The court overruled appellant's said special exception. In addition to said special exception, appellant pled the general denial, and, so far as we are here concerned, pled that the deceased had been informed that the wire was down, and, possessed of such knowledge, voluntarily undertook to move the wire which was so down on the Taber premises and Taber thus came into contact with the wire, and such action was contributorily negligence, and a proximate cause of Taber's death.

When appellee rested, and again at the conclusion of the whole case, appellant moved for a directed verdict. However, the court submitted the case to the jury upon sixteen special issues. Appellant objected and excepted to the court's charge in various particulars, and further preserved its objection to the case being submitted or tried upon an issue of whether the wires were "defective", without specifying in what respect the same were defective. In substance the special issues which were submitted to the jury were (a) those designed to determine whether appellant was negligent with respect to the failure to repair the wires, and whether same was a proximate cause of Taber's death and (b) appellant's special issues on unavoidable accident, and on contributory negligence as a proximate cause of Taber's death. The court also submitted an issue on the amount of appellee's damages. The jury found for appellee on her special issues on primary negligence, and against appellant on its issues of unavoidable accident, and contributory negligence. And, as indicated above, the court rendered judgment for appellee on the jury's findings. In this connection it may be added that the jury's finding of unavoidable accident is not assailed by appellant here. Neither is the jury's finding with respect to damages questioned.

Appellant predicates its appeal upon fifteen points, covering more than four pages of its brief. While this breach of the rules by appellant precludes setting its points out in this opinion, we will state that the points complain (a) that there was no evidence, and that there was insufficient evidence to support the jury's findings on primary negligence, and with particular reference to the finding that such negligence, if any, was a proximate cause, and (b), further complain that the evidence compelled the finding that Taber was guilty of contributory negligence which was a proximate cause of his death, and (c), further complain of matters of practice and procedure in certain particulars which, if well founded, would require that the cause be remanded for a new trial.

It was undisputed that no one actually saw Taber at the time he came into contact with, or grasped the wire which electrocuted him. We make the following rather detailed statements of the facts and circumstances. It will be noted from the following statement that we have first stated the facts which bear particularly on the primary negligence issues, and next have stated the facts which bear more particularly on the contributory negligence issues:

I. Appellee's evidence, so far as here material, was in substance: The Taber residence faced north, and immediately south of the Taber residence was an alley. The electric service wires ran from a pole located in the alley approximately opposite the southeast corner of the Taber premises to the rear of the Taber residence. At the pole one of said service wires was located about 8 inches below the other service wire which served the Taber residence. However, at the house the knobs to which the wires were attached were placed side by side. Appellee testified that she had been familiar with the wires since 1919 when her parents, together with their family, inclusive of herself, moved into said residence, which in reality belonged to appellee's parents, but which has throughout this record been designated as the Taber residence. Appellee further testified that at no

time during the 28 succeeding years have the wires ever been repaired or replaced. The wires would swing in the slightest breeze. Appellee first complained to appellant's repair department in 1943 about the condition of the wires, but in reply was informed that due to the war there was no wire and appellant refused to inspect the wires. Thereafter, at various times, appellee complained to the company about the condition of the wires, but the company never did anything about it. The last such complaint made by appellee was in January of 1947. Appellant made no denial that it had received such reports from appellee relative to the defective condition of the wires. Appellant did not have the wires inspected. Said wires were introduced in evidence below and have been brought up in the record. The insulation is gone from it. With respect to said wires, appellant's witness Kinzer identified some five different places where the wires had come into contact with each other and the result of such contact had been to burn and weaken the copper. The following is taken from said witness' testimony: "A. If there is sufficient sag to permit arcs through which each wire would swing, there is a possibility of their touching.

"Q. Yes sir, that is what I have been trying to get at sir. A piece of metal, such as wire, if bent back and forth continuously will eventually crystallize and break, will it not? A. If it is projected to sufficient bending stresses, it will break."

Appellant's witnesses Maxwell also testified in substance that ordinary service wires do not break in the kind of wind that was blowing on the day in question unless struck by flying objects, if they are in good condition.

On the day in question, the wind was blowing and the rain falling. There was a wide divergence of views between appellee and appellant's witnesses as to the violence of the wind and rainfall. No official weather reports were introduced and appellee's testimony is sufficient to sustain the jury's finding that the broken service wire was not down do solely to an act of God.

II. Between 3 and 4 o'clock in the afternoon of the day in question, while appellee was sitting in the kitchen, which overlooks the rear of the premises, she was drinking coffee and talking to the other members of the household other than her husband. Her husband was out in the garage engaged in painting the automobile. Rain was falling and the wind was blowing. The wind was at least strong enough to break off a branch from a tree in the Taber back yard as well as to result in electric wires being down all over the city. Appellee noticed that one of the service wires had broken and fallen down. The break occurred a few inches from the pole. Appellee at once pulled the switch and went out to the garage to notify her husband what had happened. He told her to pull the switch and she told him she had already done so. He then told her he was nearly through with the paint job and would come in as soon as he had finished. Appellee then returned to the house and resumed drinking coffee and talking with other members of the household. She looked out and saw her husband when he left the garage. At that time he held a board which was seven feet long and three and three-fourths inches wide. When next she looked, he was no longer holding the board and was walking toward the house. Appellee's attention was diverted, but when she next looked out she saw her husband falling or just starting to fall backward. He was facing east with both hands turned out and closed about the wire, held about shoulder high.

The physical facts relative to the lay of the back yard, so far as we deem necessary to give them, are as follows: The garage is located in the southwest end of the back yard. Between it and the back door lay the branch which had broken off from the tree which was in the back yard. On the east side of the back yard near the rear of the premises was located an outdoor sanitary closet. Between the rear of the house and the outdoor sanitary toilet was a flower garden which extended from the east side of the back yard toward the west and which was surrounded by wire netting or a chicken fence.

The tree mentioned above as being in the back yard was some four or five feet distant from the west fence of the flower

garden and, as stated, the limb which had broken off of the tree was lying west of the tree.

The fallen wire, when it broke, looped over the aforesaid outside sanitary toilet and was hanging over the flower garden. Appellee testified that she saw no change in the position of the broken wire from the time it looped over the toilet until she saw it clasped in deceased's hand.

As appears above, no eyewitness saw Taber come into contact with the wire which electrocuted him. It was undisputed that he knew that the wire was down, and the law charged him with knowledge that it was dangerous,—indeed, appellee made a trip to the garage for no other purpose than to warn him of the danger so that he could avoid it. Because of the presumption that Taber would not voluntarily have come into contact with, and because it is a matter of conjecture as to how the wire came into Taber's hands, we have found the case perplexing.

The plaintiff had the burden of proof to show that appellant was guilty of negligence and that such negligence was a proximate cause. In Texas, unlike certain other states, appellee had no burden of pleading and proving that Taber was not guilty of contributory negligence. Gulf C. & S. F. Ry. Co. v. Shieder, 88 Tex. 152, 130 S.W. 902, 28 L.R.A. 538. In Texas, contributory negligence is an affirmative defense, and, with respect thereto, a defendant has the burden of proof. Id. If on the issue of contributory negligence, there is an absence of evidence, or if the preponderance of evidence thereon balances, so that it cannot be determined whether the victim was negligent or not, the defendant has failed to meet the burden of proof on his affirmative defense. See Clark v. Hills, 67 Tex. 141, 2 S.W. 356. In this connection, it will be borne in mind a plea of contributory negligence presupposes the existence of primary negligence, which was also a proximate cause of the injuries of the victim. Of the doctrine of contributory negligence as a defense, Judge Phillips, in St. Louis Southwestern Ry. Co. v. Arey, 107 Tex. 366, 369, 179 S.W. 860, 861, L.R.A. 1916B, 1065, said, among other things: "It is founded, as has been said, on the mutuality of the wrong, the impolicy of allowing a party to recover for his own wrong, and the policy of making personal interests of men dependent upon their own prudence and care." It is thus perfectly apparent that when, in a regular orthodox suit to recover damages based on the negligence of a defendant, the fact that the evidence may leave it in doubt whether plaintiff was guilty of negligence which was a proximate cause, this merely leaves the defendant's affirmative defense in doubt, and does not prevent appellee from recovering in the main suit, so to speak.

On the other hand, in those classes of cases in which a plaintiff is allowed to invoke the doctrine of res ipsa loquitur, which is a rule of evidence, or rather of circumstantial evidence, a presumption will be indulged that the defendant ought to have foreseen and averted the calamity. For a statement of what evidence will give rise to such presumption, see 30 Tex.Jur. 802, et seq., and cases there cited, and Texas & Pacific Coal Co. v. Kowsikowsiki, 103 Tex. 173, 125 S.W. 3, 4, and authority there cited. The doctrine of res ipsa loquitur does not apply where the evidence leaves it uncertain whether the negligence of the victim or that of the defendant was the proximate cause. The doctrine has no application where the facts shown are equally consistent with the hypotheses "that the injury was caused (1) by the negligence of deceased, or (2) by that of defendant, or (3) by that of both deceased and defendant. * * * The defendant certainly is not called upon to account for the conduct of the deceased." See Kowsikowsiki case, supra.

in this case, appellee's pleadings were drawn to invoke the doctrine of res ipsa loquitur, and the case was tried on that theory. We think that, upon the trial, the appellee adduced evidence which was sufficiently particular as to the defective condition of the wire which would have sustained a verdict that appellant was guilty of negligence which was a proximate cause, and this without the aid of the doctrine of res ipsa loquitur. But appellee

could not have known in advance, or at least was not bound to stake her suit on the hazard that she could adduce evidence of negligence which was a proximate cause with the aid of the doctrine of res ipsa loquitur. In any case, after careful consideration, we have concluded that the jury were warranted in concluding that the evidence preponderated against the hypothesis that Taber intentionally grasped the wire. The position of his hands were the position they would assume if he saw the wind swing the wire toward him. The presumption is all against any voluntary act of clasping the wire. .

Under the court's proper definition of proximate cause, and under the evidence, the jury was warranted in finding that the defective condition in which the wire was maintained was negligence, and the proximate cause of Taber's death. In Texas Public Service Co. v. Armstrong, Tex.Civ.App., 37 S.W.2d 294, 295, writ refused, the court applied a correct definition of proximate cause to the facts there before it relating to a case of electrocution. Said the court "The general rule as to proximate cause is that, in order to hold one responsible for injuries resulting from his negligence, the injuries must be such that they ought reasonably to have been foreseen * * *." It cannot be seriously contended that appellant could not foresee that, if it left weakened, uninsulated wires remain, they would probably fall and injure someone lawfully upon the Taber premises.

It was not reversible error for the court to permit appellee to testify over appellant's general objection that such testimony was "immaterial, irrelevant and prejudicial" that appellant, following the accident, had caused the old wires to be removed and new ones put up which did not sag like the old ones. While such evidence was inadmissible as an admission by appellant of the existence of defects or of negligence, it was admissible to show control and ownership over the wires, and that, contrary to what appellee was told, appellant did have available wire. Appellant did not request that the evidence be limited for the purposes for which it was admissible.

We are not free of doubt as to appellee's right to have the case tried and submitted under the doctrine of res ipsa loquitur where the evidence showed that appellee, as the event turned out, was able to prove or offer proof on, the particulars as to the defective condition of the wires. But electricity is a mysterious force, and we think that appellee was not bound to limit herself with reference to the particulars as to the defective condition. Appellant, in one way or another, attacks the action of the trial court, in permitting the application of the doctrine of res ipsa loquitur, by its points 4, 5, 6, 7, 8, and 9. But we have concluded that said points present no reversible error, and overrule them on the consideration that appellee presented a case under the facts of which she was entitled to invoke the aid of the doctrine of res ipsa loquitur.

We think that appellee gave reasons for testifying that the wires were bad. Appellee introduced both wires and failed to identify which of the wires it was that broke. The wire broke about six inches from the pole. If she proved that both wires were defective she was merely supporting her allegations. We fail to see what harm could come to appellant from the fact that appellee did not distinguish between the wires. We think the court did not err in refusing to grant a mistrial because of appellee's failure to control her emotions shortly after she was placed on the stand, and certain unresponsive answers she made. No request was made to have the jury not consider such answers. In a word, we think there was no abuse of the court's discretion shown, and that the court was justified in considering appellee's emotion was merely natural, and not trumped up to play on the sympathies of the jury, and that same was seasonably brought under control. Without further prolonging this opinion, we have considered appellant's points and have concluded that no reversible error was shown.

The judgment is affirmed.