HOUSTON LIGHTING AND POWER
COMPANY, Appellant,

v.

Henry Alton BROOKS et al., Appellees.

No. 13322.

Court of Civil Appeals of Texas.

Houston.

Dec. 4, 1958.

Rehearing Denied Jan. 8, 1959.

F. L. Andrews, Wm. H. Tenison, Jr., Bass C. Wallace, Houston, Andrews, Kurth, Campbell & Bradley, Houston, of counsel, for appellant.

William L. Bowers, Jr., McGregor, Sewell & Junell, Houston, for appellee Travelers Ins. Co.

Raymond L. McDermott, Albert P. Jones, Mabel G. Howell, Helm, Jones, McDermott & Pletcher, Houston, for appellee Henry Alton Brooks.

WERLEIN, Justice.

This suit was brought by appellee, Henry Alton Brooks, against appellant, Houston Lighting and Power Company, to recover damages for personal injuries sustained by him when the aluminum handle of a mop or float he was using to smooth concrete on the unfinished third floor of the Heights Hospital Annex being constructed on Ashland Street in Houston, created an electrical contact with one of appellant's high-voltage wires. The court entered judgment based on the jury verdict in favor of appellee and a stipulation covering $5,833.-45 medical expenses to date, in the total sum of $155,833.45, out of which the intervenor, Travelers Insurance Company, compensation insurance carrier, was decreed $13,708.45. The trial court required a remittitur of $50,000, thus reducing the total judgment to $105,833.45. At the close of appellee's case, appellant moved for an instructed verdict, and later for judgment non obstante veredicto, which motions were overruled. Appellant has duly perfected its appeal. Appellee presents a cross-point based on the remittitur required by the trial court.

On the date of the accident, December 29, 1953, appellee, a cement finisher by trade, was working for his employer, Texas Gulf Construction Company. At such time appellant owned, operated and maintained

under a franchise from the City of Houston near said construction project high-voltage electric transmission lines composing a circuit carrying 12,000 volts of electricity. Said lines ran along the west side of Ashland Street and parallel to and east of the Hospital Annex. The lines in question were approximately 34 feet above the street level and more than 8 feet higher than the floor upon which appellee was working at the time of injury and more than 8 feet from the east wall of the Annex but less than 8 feet from the vertical plane of the outside edge of a 3-foot-wide canopy on the annex several feet lower than the third floor of the building.

There was testimony that while appellee was holding the mop handle about 3 feet from the float with about 12 or 13 feet sticking out behind him, smoothing the concrete, with his back toward Ashland Street and said wires, the mop handle created an electrical contact with the nearest high-voltage wire, thereby causing appellee's injuries. The concrete was "pretty wet" and it was necessary to work concrete fast as otherwise it might set before being smoothed out. It was stipulated that neither appellant nor appellee's employer had at any time directly or indirectly warned appellee about any electrical lines on the east side of the annex. Appellee testified he had been running the mop east and west with his back to Ashland Street about 15 minutes and that he had no reason to look behind him.

There was evidence that appellant knew of the construction work going on at the Heights Hospital Annex. It was also shown that appellant's supervisor of street lighting and maintenance operation in Harris County had gone to the job site to do some work on a transformer in connection with the construction of the annex two or three days prior to the time appellee was injured. At that time the state of the construction of the annex was substantially the same as at the time of the injury. Said supervisor testified that at such time he observed the proximity of the wires to the construction.

Appellant's Point One asserts that it at no time violated or breached any duty owed by it to appellee. Appellant says that it had owned, operated and maintained said high-voltage transmission lines for many years in the same location, and that such lines were in clear view from the unfinished third floor of the Annex. It is admitted that no one warned appellee of the danger involved. Appellant contends that the proximity of the lines only became dangerous when appellee, in disregard of his own safety, permitted the long-handle mop to contact or come in close proximity to such lines, and that there was no evidence that any utility company ever de-energized its lines as a matter of custom or procedure in proximity to construction projects unless requested and arrangements made to reimburse it for the cost of removal or de-energization.

Appellee asserts that there was a violation of the National Electrical Safety Code since the line in question was nearer than 8 feet east of the vertical plane of the outside edge of the canopy. Appellant contends that the canopy, being lower than the unfinished third floor where appellee was, cannot be considered. In our opinion, the 8-foot measurements contained in the Code have reference to a completed building and not one under construction. In any event appellee's case is predicated upon common-law negligence and not a violation of said Code.

Appellant, though asserting that appellee was not an invitee, contends that even under the law applicable to invitees, it owed appellee no duty. There can be no question that appellee was the invitee of his employer and that he had a right to perform his duties at the place he was working, and that appellant knew of the construction work going on and the proximity of the wires to the project. We think the general law of negligence would apply. Texas Public Service Company v. Armstrong, Tex. Civ.App., 37 S.W.2d 294, writ refused.

If appellant's conduct threatened harm which an ordinarily prudent person

engaged in its hazardous business might reasonably have anticipated to one engaged in the construction of said annex as was appellee, then appellant was under a duty to guard against such harm. It is not necessary that appellant should have anticipated the exact nature of appellee's injury or the precise manner of its infliction. It is sufficient that it might reasonably have anticipated consequences or an injury of the general nature of that which ensued. See Hopson v. Gulf Oil Corporation, 150 Tex. 1, 237 S.W.2d 352, and authorities cited therein.

■ The obligation resting on appellant is well stated in West Texas Utilities Co. v. Renner, Tex.Com.App., 53 S.W.2d 451, 454. An employee of an independent contractor lost his balance while working on the roof of a structure being built and undertook to regain it while holding in his hand a metal bar that was to be placed in the building. In doing so, the bar contacted a high-voltage wire. The court said:

> "A company maintaining electrical wires over which a high voltage of electricity is conveyed, rendering them highly dangerous to others, is under the duty of using the necessary care and prudence at places where others may have the right to go, either for work, business, or pleasure, to prevent injury. Rucker v. Sherman Oil & Cotton Co., 29 Tex.Civ.App. 418, 68 S.W. 818; Joyce Electric Law, § 445."

In reply to the contention that the employee had knowledge of the danger of working near high-voltage lines and had been warned of such danger, and therefore was guilty of contributory negligence as a matter of law, the court quoted the following:

> " 'The obligation resting on the user of wires highly charged with electricity to exercise reasonable care to avoid injury to all known to be rightfully coming into a place of danger from such wires,' said Mr. Justice Green-

wood in Galveston-Houston Electric Railway Co. v. Reinle, 113 Tex. 456, 258 S.W. 803, 805, 'is thus stated in 9 R.C.L. page 1206, § 16, viz.: "This duty of using the necessary skill and prudence to prevent injury to persons coming in contact with their wires is imposed upon electric companies, not only as regards the public generally, but also with respect to any individual engaged in a lawful occupation in a place where he is entitled to be. Such persons are not trespassers or licensees bound to take the premises in the condition in which they find them." * * *' "

See also Oil Belt Power Co. v. Touchstone, Tex.Civ.App., 266 S.W. 432, no writ history; Brillhart v. Edison Light & Power Co., 368 Pa. 307, 82 A.2d 44.

■ In Robert R. Walker, Inc. v. Burgdorf, 150 Tex. 603, 244 S.W.2d 506, 509, our Supreme Court, speaking through Justice Sharp, made the following pertinent statement:

> "From those who handle explosives, combustible gases, gasoline, petroleum, electricity, and similar dangerous commodities, the law exacts a duty to protect the public which is proportionate to and commensurate with the dangers involved."

We think the cases cited by appellant are distinguishable. The case of Burnett v. Rutledge, Tex.Civ.App., 284 S.W.2d 944, writ refused, n. r. e., involved an operation on the ground where the mast of an oil well cleaning unit was being raised under a wire 25 feet above the ground level. The jury found that the defendants were not guilty of negligence. The dictum of the Court relative to the Electrical Safety Code has no application in the present case.

In Nance Exploration Co. v. Texas Employers Ins. Ass'n, Tex.Civ.App., 305 S.W. 2d 621, ref., n. r. e., a drilling truck with a 35-foot mast was moved from place to

place for the purpose of drilling holes. The injured party testified that as they drove the truck up to the last hole, he looked up at the line which he knew was a power line. He observed the whole operation as the wire was contacted by the 35-foot mast and he understood the danger.

The cases of Houston National Bank v. Adair, 146 Tex. 387, 207 S.W.2d 374, and Fergeson v. National Bank of Commerce, Tex.Civ.App., 174 S.W.2d 1015, no writ history, involved injuries to business invitees resulting from slipping on stairs with which they were familiar, the conditions complained of being as open and obvious to them as to the owners. In A. C. Burton Co. v. Stasny, Tex.Civ.App., 223 S.W.2d 310, writ refused, a business invitee without looking where he was going walked through a showroom window which was perfectly open and obvious and previously seen by him.

The case of McGinty v. Texas Power & Light Co., Tex.Civ.App., 71 S.W.2d 354, writ ref., is also distinguishable. In that case the injured party was a mere licensee when he climbed up on the electric company's platform on a customer's premises to disconnect a wire.

 In the present case the appellant owned and operated the high-voltage wires, knew of the extreme danger to life and limb if contacted, and also knew the state of construction of the annex, and with such knowledge either knew or was charged with notice that some employee working on such construction job might in some manner contact such wire with a conductor of electricity and sustain serious injury therefrom. On the other hand, the employee was inexperienced in electricity, and was not conscious of the hazard involved, had not been warned of the presence of the wires and had not observed them, and at the time of his injury was intent upon his work using the customary and usual tool for smoothing wet concrete. Under the circumstances appellant was charged

with the duty of removing or de-energizing the lines in question, or of giving warning of the grave danger involved in contacting such wires, whether with an aluminum handle mop, with a reinforcing iron rod, or other conductor of electricity commonly used in such construction work. We think, therefore, that the trial court properly overruled appellant's motions for an instructed verdict and judgment non obstante veredicto.

Appellant's Points Two to Seven, inclusive, in effect assert that appellant cannot be held negligent because there was no pleading of notice to or knowledge of appellant of the construction of the annex in question, or of the hazard arising from appellee's actions, and no pleadings to support Special Issues, 1, 2, 3 and 5.

 Appellee alleged that his employer was engaged in erecting an addition to the Heights Hospital, and that in the vicinity of the new construction there were certain lines of appellant suspended on poles and cross-arms, and that unknown to appellee the lines were carrying a high-voltage current. He alleged the kind of implement he was using in spreading concrete. He further alleged nine acts of negligence of appellant and that each was a proximate cause of his injuries. The allegations in appellee's petition were sufficient to apprise appellant that appellee was an invitee on the job on which he was employed to work. In this respect the present case is distinguishable from the case of McGinty v. Texas Power & Light Co., supra, relied upon by appellant.

The records of appellant pertaining to the annex in question were introduced without objection except as to events subsequent to the accident. These records, coupled with the testimony of appellant's witnesses, Stafford, Means and O'Neill, clearly show that appellant knew about the construction going on and knew where the lines were and their proximity to the annex. Indeed, appellant's supervisor, O'Neill, had made inspections of the various lines in the area

and testified that when he was there two or three days before the accident he had observed the wires running alongside the building and their relation to the building, and that they were substantially the same as in the pictures introduced in evidence. These wires were under his jurisdiction. Appellant was the only one that had the authority to change them or cut the electricity.

Although appellant probably neither knew the exact nature of the work that was to be done on the day of the accident nor the precise kind of mop that would be used, it did know the construction work was in progress, and will be presumed to know what is commonly known, that in such construction concrete floors are smoothed with mops and also that reinforcing rods such as prominently appear in the exhibits are used in such structures. Moreover, it was proved that appellant knew of the plans for the construction of the building and had followed the progress of the construction and hence could reasonably anticipate the next stages thereof.

▮▮▮ Only the ultimate facts constituting a cause of action need be pleaded and it is not necessary to set forth the evidence by which it is sought to establish such facts. Appellee pleaded negligence on the part of appellant and, as stated in 30-B Tex.Jur., Negligence, Sec. 9, p. 180, "Negligence can only be predicated upon knowledge, actual or constructive." It will be noted also that appellant knew that the construction was gradually approaching nearer to the high-voltage wires in question. We think it was unnecessary for the court to submit an issue as to whether appellant knew of such changed condition for the reason that it is undisputed that appellant did have such knowledge. This distinguishes the present case from the case of Hill v. Dallas Railway & Terminal Co., Tex.Civ.App., 235 S.W.2d 522, ref., n. r. e., relied upon by appellant. In that case there was no evidence that the defendant knew of the changed condition, that is, of the shift in the position of the pole

from a distance of 11 feet to less than 4 feet of the defendant's high-voltage line, nor was the lapse of time shown during which the change of condition should have been discovered in the exercise of ordinary care.

The case of Wilson v. Texas Electric Service Co., Tex.Civ.App., 265 S.W.2d 624, ref., n. r. e., is also distinguishable in that the Electric Company had the right to assume that it would be notified if one of its wires more than 20 feet above ground level rendered the use of a movable crane dangerous in a neighborhood where the company did not know the crane was to be used.

The cases of Havens v. Dallas Power & Light Co., Tex.Civ.App., 256 S.W.2d 689, ref., n. r. e., and West Texas Utilities Co. v. Dunlap, Tex.Civ.App., 175 S.W.2d 749, no writ history, are likewise distinguishable. In the Havens case a sign was being erected on the roof of a building under conditions that its construction could not be seen by anyone more than three days before the accident. The court stated [256 S.W.2d 691]:

"Where the defect or dangerous condition causing the injury does not arise from the negligence of the Power Company, its liability turns on whether it knew or by the exercise of reasonable diligence should have known of the situation in time to have avoided the injury. 29 C.J.S. Electricity § 47, p. 596."

In the Dunlap case the appellant was without knowledge of the erection (had not discovered the erection) of the building under the power line. In the absence of any knowledge of the building operations, the appellant, having strung its line upon poles 27 or 28 feet above the ground, could not have reasonably foreseen any danger to the deceased as resulting from a failure to insulate. The court said [175 S.W.2d 754]:

"In our opinion, if it be properly established that by a violation of its

duty of inspection, appellant was guilty of negligence in failing to discover that a building was being erected in close proximity to the line, in that such knowledge would have imposed the further duty to cut off the current from the particular section of the line in such proximity to the building operations; and if such negligence was the proximate cause of the death of Earnest Dunlap and the latter was not guilty of contributory negligence, the plaintiffs would be entitled to judgment."

In the cases relied upon by appellant the absence of notice was important in testing foreseeability. In the instant case notice of the construction and the proximity of the wires was proved without objection that there were no pleadings.

Appellant's Points 8, 9 and 10 are to the effect that appellee was guilty of contributory negligence as a matter of law and that the finding of the jury that appellee did not fail to keep such lookout for appellant's high power lines as an ordinarily prudent person would have done, is not supported by any evidence and is against the great weight and preponderance of the evidence.

■ With this contention we do not agree. The fundamental principle of appellate review is that the record must be viewed in the light most favorably in support of the judgment of the trial court and the jury verdict. It was stipulated that appellant never warned appellee about any electrical lines on the east side of the Hospital Annex, nor did his employer warn him. It was his first day on the job. His work was such that his eyes were on the concrete; he was working fast to prevent it from setting. He testified he had not seen the wires, and if he had seen them, from his past experience he would have assumed they were dead; he had never been in such close contact with a hot wire without being warned; there was no time for sightseeing.

■ Whether a plaintiff has exercised due care is ordinarily a question of fact for the jury. See Tidy Didy Wash v. Barnett, Tex.Civ.App., 246 S.W.2d 303, refused, n. r. e.; Missouri Pacific Railroad Company v. Rhoden, Tex.Civ.App., 310 S. W.2d 607. Appellant cites the McGinty, Nance and Stasny cases, supra. Those cases are clearly distinguishable on their facts from the instant case, as hereinabove shown. The case of Texas Mexican Ry. Co. v. Hoy, Tex.Com.App., 24 S.W.2d 18, is rather doubtful as an authority in view of later decisions by the Supreme Court. In any event, a very unusual fact situation was presented in that case.

In Texas & Pacific Railway Company v. Day, 145 Tex. 277, 197 S.W.2d 332, 334, the court held that the plaintiff's failure to look for the oncoming train at the proper moment was not contributory negligence as a matter of law. The court stated:

"But the legal test is, not what the traveler could have done had he used his senses, but what an ordinarily prudent person would have done under the particular circumstances. Hence the courts have held that the failure to look and listen before going upon a railway track is not, as a matter of law, contributory negligence."

See Tri-County Electric Cooperative v. Clair, Tex.Civ.App., 217 S.W.2d 681, writ ref., n. r. e., and Southwestern Gas & Electric Company v. Lain, 5 Cir., 1943, 139 F.2d 142. In the latter case the court stated that there could be no contributory negligence where there is no knowledge of danger.

■ Under the facts and circumstances of this case, the jury were warranted in finding that appellee was not guilty of contributory negligence, and such finding is not against the great weight and preponderance of the evidence.

The court submitted the following issue on contributory negligence:

"Do you find from a preponderance of the evidence that at the time of and

on the occasion in question Henry Alton Brooks failed to keep such a lookout for the defendant's high power lines adjacent to the Heights Hospital Annex along Ashland Street as would have been kept by an ordinarily prudent person in the exercise of ordinary care under the same or similar circumstances?"

The appellant did not except to such issue but requested that the court give its Special Issue No. 3 reading:

"Do you find from a preponderance of the evidence that on the occasion in question Henry Alton Brooks permitted the float handle he was using to come closer to the high power lines of the defendant adjacent to the Heights Hospital Annex along Ashland Street than an ordinarily prudent person in the exercise of ordinary care would have done under the same or similar circumstances?"

█ We do not think that the court erred in refusing the appellant's requested Special Issue No. 3, together with its Special Issue No. 4 on proximate cause, for the reason the fact inquired about in such issue is substantially the same as that inquired about in the issue given by the court. It was the contention of appellant that if appellee had maintained a proper lookout he would have seen the wires in question, which appellant asserted were open and obvious, and would have avoided creating the electrical contact causing his injury. We see no object that could be subserved by appellee keeping a proper lookout for appellant's high power lines other than to avoid permitting the mop handle to contact them. The appellant pleaded negligence generally. We think the issue given properly presented appellant's theory that had appellee kept a proper lookout, he would not have contacted the wires. Had the court also submitted the issue requested, it would have been a double submission of the same defensive theory.

In Northeast Texas Motor Lines, Inc. v. Hodges, 138 Tex. 280, 158 S.W.2d 487, 489, the court stated:

"It has never been the policy of the law to lengthen and complicate special issue charges by requiring trial courts to give issues that merely submit various phases or other shades of meaning of an issue already in the charge. It is required only that each controlling issue raised by the pleadings and the evidence be submitted once, fairly, simply and succinctly. Otherwise, such charge could be drawn out to interminable length confusing not alone to the jury but to court and counsel as well."

Rule 279, Texas Rules of Civil Procedure, specifically provides that where the court has fairly submitted the controlling issues raised by pleadings and evidence, the case shall not be reversed "because of the failure to submit other and various phases or different shades of the same issue."

█ We do not think that the doctrine of volenti non fit injuria has any application in the instant case. Appellant relies largely on the cases of McKee, General Contractor, v. Patterson, 153 Tex. 517, 271 S.W.2d 391, and Chekanski v. Texas & N. O. R. Co., Tex.Civ.App., 306 S.W. 2d 935, writ ref., n. r. e., recently decided by this Court. In the McKee case the plaintiff testified to his knowledge of the slick condition of the floor upon which he was working. He fully appreciated the danger of working on it as he was doing. In the Chekanski case the evidence showed that the plaintiff, a licensee, saw the 2-foot path between two piles of dirt and the loose dirt on the pathway, but nevertheless attempted to use the path. The condition was open and obvious to her.

In Triangle Motors of Dallas v. Richmond, 152 Tex. 354, 258 S.W.2d 60, 64, our Supreme Court through Justice Calvert stated:

"A plaintiff's right to recover cannot be defeated on the theory that he

assumed the risk of injury under the doctrine of volenti non fit injuria unless it appears that with full knowledge of the nature and extent of the danger involved he put himself in the way of the particular risk involved as the result of an intelligent choice. Wood v. Kane Boiler Works, 150 Tex. 191, 238 S.W.2d 172."

There is nothing in the present case to show that appellee ever noticed the electric wires in question or had any knowledge of the danger.

■ There is no merit in appellant's Point 13 asserting that the trial court improperly admitted evidence of subsequent precautionary measures taken by it. Appellant's witness O'Neill testified that it would not be so simple a matter to either move the wires away from the building under construction or to cut the electricity so that the current would not flow through such wires and reroute it another way, and that it would not be practical to do so. Having so testified he was then asked whether it was not a fact that he did do it a few days after the accident. Thereafter the superintendent of appellant's engineering department testified that a de-energizing order was issued on January 13, 1954, following the accident. He also testified that it was a relatively simple procedure to move the wires or cut the electricity and the interruption of the service would not be more than an hour.

We think the testimony was admissible under the circumstances. The applicable rule and exceptions thereto are set out in Vol. 2, McCormick and Ray, Texas Law of Evidence, Sec. 1151, p. 42. See also St. Louis, A. & T. R. Co. v. Johnston, 78 Tex. 536, 15 S.W. 104; Texas Midland R. Co. v. Truss, Tex.Civ.App., 186 S.W. 249, writ ref.; Houston Lighting & Power Co. v. Taber, Tex.Civ.App., 221 S.W.2d 339, ref. n. r. e.

In the present case the burden was on appellee to prove that the wires could be moved or de-energized as a practical matter, when appellant's witness testified that it would be impractical to do so. No changed condition was shown which made it easier or more practical to move the wires or de-energize them after the accident than before.

■ Appellant's Point 14 asserts that the acts and omissions of Texas Gulf Construction Company were the sole proximate cause of the accident. The jury found that they were not. If it be assumed that the Texas Gulf Construction Company should have warned appellee of the danger from the wires, its failure to do so would not be the sole proximate cause of the accident in view of the duty devolving upon appellant and its concurring negligence. Robert R. Walker, Inc. v. Burgdorf, supra. In McAfee v. Travis Gas Corporation, 137 Tex. 314, 153 S.W.2d 442, 447, the court said:

"We think it is the generally accepted rule as applied to torts that 'If the effects of the actor's negligent conduct actively and continuously operate to bring about harm to another, the fact that the active and substantially simultaneous operation of the effects of a third person's innocent, tortious or criminal act is also a substantial factor in bringing about the harm does not protect the actor from liability.' Restatement of the Law of Torts, Vol. 2, p. 1184, § 439. Stated in another way, 'The intervention of an unforeseen and unexpected cause is not sufficient to relieve a wrongdoer from consequences of negligence, if such negligence directly and proximately co-operates with the independent cause in the resulting injury.' * * *"

See also Gulf, C. & S. F. R. Co. v. Ballew, Tex.Com.App., 66 S.W.2d 659.

Appellant's Point 15 is that the judgment is not supported by the verdict because there is neither a fact finding nor evidence as a matter of law that defendant knew or should have known of the

location of the Annex with respect to its lines. We think there is no merit in this point. The evidence as hereinabove shown is undisputed that appellant did know the location of the annex with respect to its lines.

By Points 16, 17 and 18 appellant asserts that Special Issues Nos. 2 and 3 constitute comments on the weight of the evidence and that the jury's answers thereto are not supported by any evidence and are against the great.weight and preponderance of the evidence. We think the proof shows indisputably that appellant did know the location of said lines before the accident and their proximity to the annex being constructed, and that the lines in question could be removed or de-energized. Moreover, each of such issues was predicated upon an affirmative answer to Special Issue No. 1, to which the jury found that the appellant was maintaining 12,000-volt electrical lines closer to the east side of the annex under construction than a reasonably prudent company or person in the exercise of ordinary care would have done. Further, no objection to such issues was made on the ground that they were duplicitous.

Appellee by cross-point asserts that the trial court erred in requiring a remittitur of $50,000.

Appellee was 29 years of age at the time of his injury, December 29, 1953. He averaged $5,500 per year in 1952 and 1953 from his work as cement finisher and long-shoreman on weekends. He made only $13 in 1954. In 1955 he made $2,725.76 and in 1956 $3,336.86 as a contractor. He paid income taxes in 1955 and 1956 but testified his debts were larger than his profits, and he would not have paid such taxes had he taken into account his debts. His burns were severe, necessitating a number of operations and skin and fat tissue grafts. He suffered intense pain for some 5 or 6 months while in the hospital. His doctor testified that he had a 15 to 25% permanent partial disability as applied to his right foot, only on orthopedic grounds; ·that there were certain areas of his body that would be tender and painful the rest of his life; and that he would not be able to return to hard manual labor.

 The trial court heard all the evidence submitted and had the opportunity to view appellee, and was in a better position to appraise the testimony and pass upon the credibility of the witnesses than is this Court. We have, however, examined the record, and compared the amount awarded in the instant case with amounts awarded in other cases, and particularly those cases in which remittiturs have been required, and we have concluded that the trial court's action in requiring the $50,000 remittitur was proper and warranted by the evidence.

Appellee's cross-point is overruled, as also are appellant's eighteen points. The judgment of the trial court is affirmed.