**Robbie Iwana CARNEY, Appellant,**

**v.**

**ROBERTS INVESTMENT COMPANY, INC. d/b/a First Choice Food Distributors, Inc., and Phillip Alan Gilbreath, Appellees.**

No. 12–90–00190–CV.

Court of Appeals of Texas, Tyler.

July 27, 1992.

Rehearing Denied Sept. 3, 1992.

Robert A. Ray, Tyler, for appellant.

Tracy Crawford, William Cornelius, Tyler, for appellees.

BISSETT, Justice.[1]

This is an appeal by Robbie Iwana Carney ("Mrs. Carney") plaintiff in the trial court, from a judgment rendered in a wrongful death action. We reverse and remand.

Burton Carney, husband of Mrs. Carney, was killed while riding on his farm tractor. He was struck from the rear by a tractor-trailer owned by Roberts Investment Company, Inc., d/b/a First Choice Food Distributors, Inc., ("Roberts Investment Company") and driven by its employee, Phillip Alan Gilbreath ("Gilbreath"). The jury found that both the negligent conduct of Gilbreath and Burton Carney ("Carney") proximately caused the collision; assigned forty-five percent (45%) to Carney and fifty-five percent (55%) to Gilbreath; and awarded total damages of $55,000.00. Roberts Investment Company, Inc. was not found negligent. Neither Gilbreath nor Carney were found guilty of gross negligence. The trial court entered judgment in favor of Mrs. Carney for $30,250.00, representing the damages less the percentage of responsibility assigned to the decedent, plus pre-judgment interest in the amount of $1,367.85. Mrs. Carney timely filed a motion for new trial, which, apparently, was overruled by operation of law.

The accident made the basis of this suit occurred in the afternoon of October 31, 1986 on a four-lane, divided highway. Carney was driving his tractor in the far right hand lane. Gilbreath was driving a large tractor-trailer truck in the same direction in

---

1. The panel before whom this cause was submitted consisted of T.C. Chadick, retired Chief Justice, Court of Appeals, Sixth District of Texas at Texarkana. Honorable Gerald T. Bissett, retired justice, Court of Appeals, Thirteenth District of Texas at Corpus Christi. Honorable Jackson B. Smith, Jr., retired justice, Court of Appeals, First District of Texas at Houston, sitting by assignment of the Chief Justice of the Texas Supreme Court pursuant to Tex.Gov't Code Ann. § 74.003(b) (Vernon 1988).

the same lane. There were no other vehicles near the accident. Gilbreath hit Carney's tractor from the rear and killed him. The only witness to the accident was Gilbreath. State Highway Patrolman Bob Delafield ("Trooper Delafield") investigated the accident. They were the only witnesses who testified concerning the alleged negligence of Carney and Gilbreath. Mrs. Carney contends in her first point of error:

> There was no evidence and insufficient evidence to support the jury's answer to question 1(b) which asked if Burton Carney was negligent and if his negligence was a proximate cause of the occurrence in question.

Mrs. Carney asserts in her second point of error:

> The jury's answer to question No. 2(a) was against the great weight and preponderance of the evidence.

Mrs. Carney claims in her third point of error:

> There was insufficient evidence to support the jury's answer to question No. 2(c).

The jury found in response to question 1(b) that Carney was negligent and that his negligence was a proximate cause of the occurrence in question. If further found in response to question 2(a) that Gilbreath was 55% negligent and in question 2(c) that Carney was 45% negligent.

Mrs. Carney alleged that Gilbreath was negligent in operating the tractor-trailer in several particulars which proximately caused injuries and death to Carney. Roberts Investment Company and Gilbreath alleged that Carney was contributorily negligent in the manner in which he operated the tractor which was also a proximate cause of his injuries and death, and that any recovery by Mrs. Carney "should be barred, or reduced as appropriate."

■ The standards and tests for determining contributory negligence ordinarily are the same as those for determining negligence, and the rules of law applicable to the former are applicable to the latter. *Fort Worth D. Ry. Co. v. Barlow,* 263 S.W.2d 278, 282 (Tex.Civ.App.—Fort Worth 1953, writ ref'd n.r.e.); *Cannady v. Dallas*

*Ry. & Terminal Co.,* 219 S.W.2d 816 (Tex. Civ.App.—Fort Worth 1949, no writ). The burden of proof on the whole case is on plaintiff, but on special issues tendered by defendant presenting affirmative defense such as contributory negligence, the burden of proof is on the defendant to prove the defense by a preponderance of evidence. *Quintanilla v. Estate of Tuma,* 579 S.W.2d 531 (Tex.Civ.App.—San Antonio 1979, writ ref'd n.r.e.); *Houston Lighting & Power Co. v. Taber,* 221 S.W.2d 339 (Tex.Civ.App.—Galveston 1949, writ ref'd n.r.e.); *Fort Worth & D.C. Ry. Co. v. Lovett,* 263 S.W. 643 (Tex.Civ.App.—Amarillo 1924, writ dism'd w.o.j.).

■ In deciding a "no evidence" point, an appellate court considers only the evidence, and reasonable inferences therefrom, which, when viewed in the most favorable light, support the jury's answers, rejecting and disregarding all other evidence and reasonable inferences therefrom. *Standard Fire Ins. Co. v. Morgan,* 745 S.W.2d 310, 311 (Tex.1987).

■ In deciding a "great weight and preponderance" point and an "insufficient evidence" point, an appellate court considers and weighs all the evidence in the record that is relevant to the point. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986); *Nat. Union Fire Ins. Co. of Pittsburg v. Janes,* 687 S.W.2d 822, 825 (Tex.App.—El Paso 1985, writ ref'd n.r.e.). The court should consider all of the evidence, both that tending to prove the fact and that tending to disprove the fact. *Nat. Union Fire Ins. Co.,* 687 S.W.2d at 825. Factual sufficiency assignments challenge the jury's answer to the issue. *Cleaver v. Dresser Industries,* 570 S.W.2d 479, 484–485 (Tex.Civ. App.—Tyler 1978, writ ref'd n.r.e.). A reversal is required if this court concludes that the verdict is so against the great weight and preponderance of evidence as to be manifestly unjust. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (Tex. 1951).

Gilbreath testified, as follows: (1) at the time of the accident, the weather was clear; there was no fog or smoke; and the sur-

face of the roadway was dry; (2) there were no other vehicles in any of the four lanes of the highway and nothing was present to obstruct his view of the roadway; (3) he was familiar with the highway and travelled it on a regular basis, about once a week; (4) there were no curves in the road; (5) as he was approaching the general area where the accident occurred, he reached the top of a hill and had an unobstructed view of several hundred yards of the highway from his position at the top of the hill to the point of impact, and first saw Carney about thirty seconds before impact; (6) he and Carney were driving in the same lane of traffic, the outside right hand lane of the four lane highway; (7) he did not sound his horn prior to striking the tractor being driven by Carney; (8) upon discovery of the Carney tractor, he applied his brakes; the brakes on his tractor worked as he expected them to work, and the brakes on the trailer did not; (9) as he crested the hill, he "glanced down", looked "away, somewhere", and when he looked down the road "there he [Carney] was"; (10) the grade of the road in the area of the accident "was not really steep, its just as long grade, kind of going in a downward direction"; and (11) there was nothing that "Mr. Carney could have done to avoid this accident."

Trooper Delafield testified: (1) Gilbreath should have been able to see Carney and his tractor from 1⁄10th of a mile away immediately before the accident; (2) Gilbreath could have avoided the accident by pulling into the left lane prior to impact or timely applying his brakes to his vehicle; (3) there were 328 feet of skidmarks from the start of the skidmarks of the tractor-trailer driven by Gilbreath to the front of the tractor-trailer when it stopped; (4) Gilbreath should have been able to see Carney from a mile away when Carney first drove onto the highway; (5) in the 1⁄10th of a mile when Gilbreath should have been able to see the Carney tractor, Gilbreath had "an opportunity to move over into the left hand lane, and had he applied his brakes at the time he would have been able to stop his tractor-trailer" before striking the Carney tractor; (6) from his inspection at the scene of the accident, Carney was not doing, and had

not been doing anything that was not correct; (7) the maximum speed of the Carney tractor was 20 miles per hour and the maximum speed limit on U.S. Highway 80 on the date of the accident was 55 miles per hour; (8) he could not say how fast or how slow Carney was traveling when he was struck by the tractor-trailer being driven by Gilbreath; (9) there was a short stretch of a shoulder adjacent to the right hand lane of the highway at the point of impact; this shoulder area was "roughly the same width as one of the traffic lanes on the highway", and was not in his opinion, "an improved shoulder"; (10) Carney could have moved his tractor to the shoulder of the road if he had chosen to do so; (11) he would expect a person in Carney's position to keep a proper lookout to the rear, and that if he had done so he could have taken some kind of evasive action that would have avoided the accident; (12) Carney had "a slow moving emblem, an orange sign," attached to the rear of his tractor at the time and place in question, which he was required by law to display when moving his tractor on a public road; (13) he saw nothing illegal on Carney's part and he was of the opinion that Carney did not violate any law in the driving of his tractor on the highway; and (14) from his inspection, it did not appear that Carney "had any knowledge of what was fixing to happen."

In considering the evidence and the reasonable inferences drawn therefrom, we conclude that there is some evidence which supports the jury's finding that Carney was negligent and that his negligence was a proximate cause of the accident. This is so because of the evidence: (1) there was a shoulder off the right hand lane of the highway that Carney could have driven on, that would have been a safer chance and would have prevented the accident; (2) Carney made no reaction to the tractor-trailer approaching from his rear, either by changing speed or veering to the right or left; (3) Carney, by keeping a proper lookout to the rear could have avoided the accident by moving out of the right hand lane of the highway before the tractor-trailer hit his tractor; and (4) had he been keeping a

proper lookout, he should have realized that the tractor-trailer was fast approaching his tractor, and he could have taken some evasive action that would have avoided the accident. Therefore, the first point, insofar as it asserts that there is no evidence to support the jury's answer to question 1(b) is overruled.

However, when all of the evidence is considered and weighed, we conclude that the evidence which precludes our holding that there is no evidence to support the jury's answer to question 1(b), does not preclude us from holding that such evidence is factually insufficient to support such answer. The burden was on Roberts Investment Company and Gilbreath to prove Carney's negligence by factually sufficient evidence. They failed to meet that burden. Carney had a legal right to drive his tractor on U.S. Highway 80 at the time, and on the date of the accident. He was in compliance with the law, which required him to display the orange sign on his tractor while driving on the highway. The shoulder, while it was suitable for driving on at the exact scene of the accident, was not shown to be suitable for driving on from the place where Carney entered the highway to the point of impact. There is no evidence that Carney reacted to any realized danger, or that he had time to so react. Trooper Delafield testified that he could not determine whether Carney reacted to the danger of his being run over by the tractor-trailer; it was the defendants burden to prove that Carney could, and should have, reacted by taking some evasive action which would have avoided the accident; they did not meet that burden. Concerning the question of proper lookout by Carney, there is no evidence that he was, or was not, keeping a proper lookout to the rear; there is evidence that the time required for Gilbreath to overtake and hit the tractor from the time he left the top of the hill to the point of impact (a distance of about 528 feet) was between 10 and 12 seconds; there is no evidence that Carney, had he seen the Gilbreath tractor-trailer as it came over the hill, could have moved his tractor out of the right hand lane within the 10 or 12 second interval

and, thus, avoided the accident. This does not meet the burden of Roberts Investment Company and Gilbreath of proving by factually sufficient evidence that Carney was not keeping a proper lookout to the rear. The only evidence concerning the issue of lookout by Carney was Trooper Delafield's testimony that it was "possible" that Carney could have seen the approaching truck in time for him to vacate the right hand lane of the highway.

In summary, Roberts Investment Company and Gilbreath, defendants in the trial court, failed to meet their burden of proving that Carney was negligent or that his negligence proximately caused the accident. Therefore, there was insufficient evidence to support the answer by the jury to question 1(b). The first point, insofar as it contends that the evidence is insufficient to support the jury's answer to question 1(b) is sustained.

Next, we turn to Mrs. Carney's second and third points of error, in which she contends that the jury's answer to question 2(a), (Gilbreath's 55% negligence), was against the great weight and preponderance of the evidence (second point) and that the evidence is insufficient to support the jury's answer to question 2(c), Carney's 45% negligence. We agree.

At best, Gilbreath was not paying attention to his driving at the moment he reached the top of the hill, some 528 feet distant from the point of impact. Carney was in plain view; there was no traffic in any of the remaining three lanes of the highway; the weather was clear; and there were no curves in the highway from the top of the hill to the point of impact. Gilbreath further testified that he was not looking down the highway when he hit Carney's tractor. The duty to keep a proper lookout encompasses the duty to observe, in a careful and intelligent manner, traffic and the general situation in the vicinity, including speed and proximity of other vehicles as well as rules of the road and common experience. *Hatcher v. Mewbourn*, 457 S.W.2d 151, 152 (Tex.Civ. App.—Texarkana 1970, writ ref'd n.r.e.).

No one testified that Carney was doing anything wrong or driving negligently. The duty to keep a proper lookout does not ordinarily require vigilance to the rear. *Cleaver v. Dresser Industries*, 570 S.W.2d at 484–485; *Solana V. Hill*, 348 S.W.2d 481, 484–485 (Tex.Civ.App.—Eastland 1961, writ ref'd n.r.e.). No one testified that Carney was negligent yet the jury found that he was 45% negligent. Everyone testified that Gilbreath was negligent. He admitted in his pleadings that he was negligent and that his negligence was a proximate cause of the accident yet the jury assigned only 55% of the negligence to him. The answer by the jury to questions 2(a) and 2(c) were based on nothing more than pure speculation and not on the preponderance of the evidence. The second and third points of error are sustained. The jury also found in answer to question 1(a) that Roberts Investment Company was not negligent in causing the accident. Mrs. Carney attacks this answer in her tenth point of error, in which she contends that the answer is against the great weight and preponderance of the evidence. We agree.

A master may be guilty of negligence in hiring an incompetent servant and be held liable for damages where the servant is found guilty of negligence. *Estate of Arrington v. Fields*, 578 S.W.2d 173, 179 (Tex.Civ.App.—Tyler 1979, writ ref'd n.r.e.); *Wilson N. Jones Memorial Hospital v. Davis*, 553 S.W.2d 180, 183 (Tex.Civ. App.—Waco 1977, writ ref'd n.r.e.). Texas courts have long recognized the master's duty to make inquiry as to the competence and qualifications of those he considers for employment, especially where engaged in an occupation which could be hazardous to life and limb and requires skilled to experienced servants. This is a duty owed by the master to the public.

At the time of the accident, the trailer being pulled by Gilbreath was owned by Roberts Investment Company. The brakes on the trailer did not work properly. The vehicle inspection sticker on the trailer had expired months before the accident and had not been renewed. Roberts Investment Company did not have a written policy or procedure concerning inspecting the trailer. Gilbreath had been fired from his last driving job for having too many accidents. Less than a month later, he was hired by Roberts Investment Company as a truck driver for "eighteen wheelers". Approximately two months after being hired, the accident made the basis of this suit occurred. Gilbreath was not required to have a physical examination before employment by Roberts Investment Company. When his drivers license expired about a month and a half after the accident, he was refused a license until he obtained glasses because his eyesight was too poor. Dr. Little, Gilbreath's optometrist, testified that in his opinion Gilbreath's eyesight was poor at the time of his hiring by Roberts Investment Company. In view of the undisputed facts relating to Gilbreath's driving record, and the condition of his eyesight at the time of the accident, along with the other facts, above mentioned, we hold that the answer to question 1(a) (that Roberts Investment Company was not negligent) is against the great weight and preponderance of the evidence. We so hold even though there is some evidence that Roberts Investment Company had oral policies and procedures designed to insure that the trailers owned by the company were properly inspected and maintained and that competent truck drivers were hired. There is no evidence that Gilbreath was a reckless driver, however, there is evidence that for some unknown reason he "looked down" as he "topped" the hill and did not again look at the highway until it was too late to stop his vehicle. The tenth point of error is sustained.

Since the sustaining of the first, second, third and tenth points of error require a reversal and remand, it is not necessary that we rule on the remaining points of error.

The judgment of the trial court is reversed and the cause is remanded for a new trial.