HOUSTON LIGHTING & POWER CO. v. HENRY ALTON BROOKS ET AL.

No. A-7186. Decided June 8, 1960.
Rehearing Overruled July 13, 1960.
(336 S.W. 2d Series 603)

*Andrews, Kurth, Campbell & Bradley, F. L. Andrews, William H. Tennison, Jr.* and *Bass C. Wallace,* all of Houston, for petitioner.

The Court of Civil Appeals erred in failing to hold that defendant at no time violated or breached any duty owed by it to plaintiff. Sears, Roebuck & Co. v. Robinson, 154 Texas 336, 280 S.W. 2d 238; Stimpson v. Bartex Pipe Line Co., 120 Texas 232; 36 S.W. 2d 473; Nance Exploration Co. v. Texas Emp. Ins. Ass'n., 305 S.W. 2d 621, Refused, N.R.E.

*McGregor, Sewell & Junell, Wm. L. Bowers, Jr., Helm, Jones, McDermott & Pletcher, Raymond L. McDermott, Mabel G. Howell* and *Albert P. Jones,* all of Houston, for respondents.

MR. JUSTICE HAMILTON delivered the opinion of the Court.

This is a suit for damages for personal injuries growing out of an electrical contact made by respondent Brooks (plaintiff in the trial court) with a high-voltage line owned and maintained by petitioner, Houston Lighting & Power Company (defendant in the trial court). The trial court entered judgment based on a jury verdict in favor of respondent, out of which judgment was decreed to the Travelers Insurance Company, compensation insurance carrier, the amount it had paid respondent for his injury and medical expenses. Petitioner had moved for an instructed verdict at the close of respondent's case, and later for judgment non obstante veredicto, which motions were overruled. Petitioner appealed to the Court of Civil Appeals and the judgment of the trial court was there affirmed. 319 S.W. 2d 427.

The case is now before us on writ of error brought by petitioner, Houston Lighting & Power Company.

On December 29, 1953, respondent, a cement finisher by trade, was working for his employer, Texas Gulf Construction Company, on a building known as the Heights Hospital Annex. At such time petitioner owned, operated and maintained under a franchise from the City of Houston near said construction project high-voltage electrical transmission lines composing a circuit carrying 12,000 volts of electricity. Said lines ran along the west side of Ashland Street and parallel to and east of the Heights Hospital Annex. The lines in question were approximately 34 feet above street level and more than eight feet higher than the floor upon which respondent was working at the time of injury, and more than eight feet from the east wall of the annex, but less than eight feet from the vertical plane of the outside edge of a three-foot wide canopy on the annex several feet lower than the third floor of the building. There was testi-

mony that while respondent was holding the mop handle about three feet from the floor with about twelve or thirteen feet sticking out behind him smoothing the concrete with his back toward Ashland Street and said wires, the mop handle created an electrical contact with the nearest high-voltage wire, thereby causing respondent's injuries. The concrete was wet and it was necessary to work it fast, as otherwise it might set before being smoothed out. It was stipulated that neither petitioner nor respondent's employer had at any time directly or indirectly warned respondent about any electrical lines on the east side of the annex. Respondent testified he had been running the mop east and west with his back to Ashland Street about fifteen minutes before the accident, and that he had no reason to look behind him, and did not see the wires; if he had seen them he would have assumed they were dead. He had been working sprading concrete on this floor, from which the lines were plainly visible, for about two and a half or three hours that morning. There was evidence that petitioner knew the construction work was going on at the Heights Hospital Annex. It was also shown that petitioner's supervisor of street lighting and maintenance operation in Harris County had gone to the job site to do some work on a transformer in connection with the construction of the annex two or three days prior to the time respondent was injured. At that time the state of the construction of the annex was substantially the same as at the time of the injury. Petitioner had owned, operated and maintained its high-voltage transmission lines for many years in the same physical location in which they were prior to the construction of the Hospital Annex. Petitioner offered evidence, which was undisputed, that it was the custom of petitioner to move, de-energize or otherwise protect its lines whenever requested to do so by contractors or building owners, and on their agreement to defray the cost of such work. There was no evidence in this case that any such request of petitioner was made prior to the accident in question.

■ Petitioner, among other points, predicates its appeal upon the proposition that it did not owe any duty to respondent to remove or de-energize its electric lines or to warn him that such lines were not de-energized because it could not be reasonably foreseen that a workman on that building would come into contact with petitioner's wires and thereby be injured. It is our holding that there is no evidence in this case establishing the fact that petitioner could reasonably foresee that a workman on the building in question would make a contact with its lines and thereby be injured, and therefore no negligence was established on the part of petitioner.

The respondent does not rely upon a violation of the National Electrical Safety Code for recovery, and the Court of Civil Appeals does not base its holding on a violation thereof. However, the question has been raised in the briefs, and we think it desirable at the outset that we clarify the matter by saying that the lines of petitioner were properly located in compliance with the ordinance of the City of Houston and Article 1436a, V.A.C.S., which incorporates the National Electrical Safety Code. It appears that the minimum requirements' in so far as they are applicable here have been complied with, that is, that the nearest line of petitioner carrying 12,000 volts of electricity has a clearance of more than eight feet from the top of said building and more than eight feet from its side.

■ For further clarification, since the relationship of the parties is important in determining the duty owed by one party to the other, we wish to point out that under the undisputed facts that whatever duty is owed respondent by petitioner is as a member of the public and not as an employee or as an invitee of petitioner.

■ The Court of Civil Appeals, in discussing the matter of foreseeability, stated that since the petitioner knew the state of construction of the annex it either knew or was charged with notice that some employee working on such construction job might in some manner contact its wires with a conductor of electricity and sustain serious injury therefrom. And further, under the circumstances petitioner was charged with the duty of removing or de-energizing the lines in question, or of giving warning of the grave danger involved in contacting such wires. It made this holding regardless of having found that petitioner probably neither knew that concrete was going to be poured and worked on the day of the accident nor that a fifteen or sixteen foot aluminum handled mop would be used. The court recognizes in its opinion that in the absence of actual knowledge on the part of petitioner of the dangerous situation which arose on the occasion in question such facts must be shown as would amount to constructive knowledge on the part of petitioner as to the hazardous situation. It arrived at its holding of constructive knowledge on the part of petitioner by reasoning that since petitioner knew of the plans for the construction of the building and had followed the progress of the construction it could reasonably anticipate the next stages thereof, that is, the time for the pouring of the concrete on top of the second floor, and that the petitioner was presumed to know what is commonly known, that in such construction concrete floors are smoothed with

mops, and therefore could reasonably anticipate the use of the long-handled mop with which the hazard with petitioner's lines was created. In the first place, the evidence shows concrete finishing is a highly specialized job, and we are not willing to say that the kind of instruments used and the manner of their use in concrete finishing is common knowledge, and this court will not take judicial knowledge of such.

■ On the matter of petitioner's being charged with reasonably anticipating the next stages of construction of the building, we have searched the record to find out just how much petitioner knew about that construction. It appears that petitioner through its employees was interested in supplying electricity to the contractor during the construction of the annex on a temporary basis, and in supplying electricity permanently for the completed building. In connection with furnishing electricity petitioner examined blueprints of the building and employees were on the building site from time to time in connection with supplying electricity, but it appears that petitnoner's and its employees' only interest in the building was in supplying electricity, and whatever knowledge they had of the building construction was incidental to furnishing electricity. There is nothing in the record to show any concern over the progress of the building from a structural standpoint on the part of petitioner or its employees. The record wholly fails to show any facts which would be a basis for holding that petitioner could reasonably anticipate the time for pouring concrete on top of the second floor. Of course petitioner knew the location of the lines in relation to the building, but since they were properly located in accordance with the National Electrical Safety Code the knowledge of such location in itself gave no reason to anticipate danger to respondent. Respondent wholly failed to establish any reason why petitioner should anticipate the injury of which he complains.

If the reason to anticipate injury is not established, then no duty arises to act to prevent such an unanticipated injury.

"Negligence rests primarly upon two elements: (1) reason to anticipate injury, and (2) failure to perform the duty arising on account of that anticipation. The ability to have foreseen and prevented the harm is determinative of responsibility." 30-B Texas Jur., p. 179, Sec. 8.

■ There is no evidence that petitioner in this instance had actual knowledge of probable danger to respondent, and there

are no facts in the record upon which to base constructive notice to petitioner. To hold petitioner liable under the facts of this case we would necessarily have to arbitrarily impute foresight to petitioner. It was said in Texas & Pacific Railway Co. v. Bigham, 90 Texas 223, 38 S.W. 162, 163:

"* * * a party should not be held responsible for the consequences of an act which ought not reasonably to have been foreseen. * * * it would seem that there is neither a legal nor moral obligation to guard against that which cannot be foreseen, and under such circumstances the duty of foresight should not be arbitrarily imputed."

■ Also, it was said in the case of City of Dallas v. Maxwell, 248 S.W. 667, 670, 27 A.L.R. 927, (Texas Com. App. opinion, approved by Supreme Court):

"In this state it is now a settled doctrine that anticipation of consequences is a necessary element in determining not only whether a particular act or omission is actionably negligent, but also whether the injury complained of is proximately caused by such act or omission. Seale v. Railway, 65 Texas 274, 57 Am. Rep. 602; Railway v. Bigham, 90 Texas 223, 38 S.W. 162; Railway v. Bennett, 110 Texas 270, 219 S.W. 197; Railway v. Behne (Texas Com. App.) 231 S.W. 354. This doctrine is the result of an effort by the courts to avoid as far as possible the metaphysical and philosophical niceties in the age-old discussion of causation, and to lay down a rule of general application which will, as nearly as may be done by a general rule, apply a practical test, the test of common experience, to human conduct when determining legal rights and legal liability. Actual anticipation is of coure not in any sense the test; but what one should under the circumstances reasonably anticipate as consequences of his conduct."

The Court of Civil Appeals relies on the case of Texas Public Service Company v. Armstrong, (Texas Civ. App.) 37 S.W. 2d 294, writ refused, as authority for showing a breach of duty owed respondent by petitioner in this case. The facts of that case are not analogous to the facts of this case. In that case the defendant light company's wire ran from its pole in the alley across one Stephen Bell's property to a church 119 feet away. Clearly, the wire had been improperly maintained in that it had been allowed to sag to where it was resting on Bell's garage, which had a corrugated roof. The top of the garage was twelve feet from the ground. During a rainstorm the garage

caught fire, evidently from the electric wire. Bell invited his neighbor, John Deary, to help him put out the fire. As Deary put his hand upon the roof of a side room attached to the garage, which roof extended down to within five feet of the ground, and attempted to climb upon said roof, it was so charged with electricity that he was immediately killed. The evidence showed that the wire had been resting on the top of this garage for about a year, and the friction from the wire rubbing on the garage had worn off the insulation.

The Court of Civil Appeals also cites West Texas Utilities Company v. Renner, (Texas Comm. App.) 53 S.W. 2d 451. In that case the plaintiff, employee of an independent contractor, was working on the roof of a structure being built on the premises for the use of the defendant, West Texas Utilities Company. The employee was an invitee of the defendant West Texas Utilities Company and the court held that the company had a duty imposed upon it, not only to warn, but to use at least ordinary care to have the premises in a reasonably safe condition.

In the case of Galveston-Houston Electric Railway Company v. Reinle, 113 Texas 456, 258 S.W. 803, 805, also relied upon by the Court of Civil Appals, the plaintiff Reinle was an invitee upon the premises of the electric railway company and was an employee of a contractor doing work for the defendant railway company. In holding the defendant liable in that case the court announced the rule:

"One cannot for his own advantage invite others to come on or remain about premises in his possession and under his control without using proper care to give warning of a grave danger to be probably there encountered, of which the invitee may have no knowledge."

It appears that the statements from the cases relied upon by the Court of Civii Appeals are directed to instances where the injured party was either an employee of the defendant or was doing some work at the invitation of and beneficial to the defendant, or where the offending lines had been either improperly installed after the erection of the nearby structure, or had been improperly maintained. None of these circumstances were present here, and therefore the cases are not controlling.

In the case of American General Insurance Company et al. v. Southwestern Gas & Electric Company, 115 Fed. 2d 706, 708,

by the Fifth Circuit Court of Appeals, the deceased Jones had been an employee of a construction company doing dragline work on a public highway in Rusk County, Texas. Defendant electric company had received notification several days before the accident of the intended work involving a dragline with a long boom in the vicinity of defendant's lines. Defendant even had an engineer present at the place of the accident when the boom made an electrical contact with the lines while Jones was touching the base of it. The court affirmed the trial court's judgment for defendant and distinguished the Reinle case, supra, upon which the Court of Civil Appeals relies, as follows:

"The appellants contend that Southwestern Gas & Electric Company was negligent in not warning Jones of the danger of the boom coming in contact with its wires, and that this negligence was the proximate cause of his death. They rely here, as they did in the court below, on the case of Galveston-Houston Electric Co. v. Reinle, 113 Texas 456, 258 S.W. 803. That case is not controlling here. Reinle was an invitee upon the premises of the electric company and was an employee of a contractor doing work for the defendant. The court announced the rule that 'one cannot, for his own advantage, invite others to come on, or remain about, premises in his possession and under his control, without using proper care to give warning of a grave danger to be probably there encountered, of which the invitees may have no knowledge'. In the case at bar Jones was not an employee of the defendant electric company or of a contractor doing work for it. Jones was not engaged in any work beneficial to the defendant, and was in no wise an invitee of Southwestern Gas & Electric Company.

\* \* \* \* \*

"* * * The plaintiffs have shown no negligence whatever on the part of the defendant. It is clear that Southwestern Gas & Electric Company could not reasonably foresee that Texas Bitulithic Company would negligently run its metal crane against the high tension lines."

Respondent does not cite any Texas case holding the owner of previously franchised and established lines in accordance with the National Electrical Safety Code liable to a member of the public without there being shown some reason for the utility to anticipate danger to him, and we know of no such case. We hold that the accident and injuries complained of were not in a legal sense foreseeable consequences of the acts or omissions charged to petitioner, so whether we measure the duty

by the measuring stick of foreseeability and say that the petitioner breached no duty it owed respondent and was therefore not negligent, or whether we say in any event petitioner's conduct was not in any of the respects complained of a proximate cause of the unforeseeable consequences, we arrive at the conclusion that liability was not established. See: Denison Light & Power Co. v. Patton, 105 Texas 621, 154 S.W. 540, 45 L.R.A. N.S. 303; Hill v. Dallas Railway & Terminal Co., (Texas Civ. App., 1951, 235 S.W. 2d 522 (error ref'd n.r.e); West Texas Utilities Co. v. Dunlap, (Texas Civ. App., 1943 175 S.W. 2d 749 (no writ hist.); Havens v. Dallas Power & Light Co. (Texas Civ. App., 1953, 256 S.W. 2d 689 (error ref'd n.r.e., and Wilson v. Texas Electric Service Co. et al., Texas Civ. App., 1954, 265 S.W. 2d 624 (error ref'd n.r.e.).

In view of the disposition we are making of this case we do not think it necessary to discuss the other points raised by petitioner.

The judgments of the Court of Civil Appeals and the trial court are reversed and judgment is here rendered for petitioner.

Opinion delivered June 8, 1960.

Rehearing overruled July 13, 1960.