**REPUBLIC OF FRANCE** & Compagnie Generale Transatlantique, Appellants,

v.

**UNITED STATES of America et al.,** Appellees.

No. 18064.

United States Court of Appeals Fifth Circuit.

May 5, 1961.

Rehearing Denied July 11, 1961.

Hutcheson, Circuit Judge, dissented.

Edwin Longcope, New York City, Clarence S. Eastham, Houston, Tex., Eastham, Watson, Dale & Forney, Hill, Betts, Yamaoka, Freehill & Longcope, New York City, Edward A. Neiley, David I. Gilchrist, New York City, of counsel, for appellants.

John R. Green, Asst. U. S. Atty., Houston, Tex., Carl C. Davis, Atty., Samuel D. Slade, Dept. of Justice, Washington, D. C., George Cochran Doub, Asst. Atty. Gen., William B. Butler, U. S. Atty., Houston, Tex., George Jaffin, William E. Gwatkin, III, Attys., Dept. of Justice, Washington, D. C., for appellee.

McLeod, Mills, Shirley & Alexander, Preston Shirley, Galveston, Tex., for appellee, Texas City Terminal R. Co.

Before TUTTLE, Chief Judge, and HUTCHESON, RIVES, CAMERON and JONES, Circuit Judges.

RIVES, Circuit Judge.

The fire upon and explosion of the S.S. Grandcamp at Texas City, Texas, while she was loading a cargo of Fertilizer Grade Ammonium Nitrate (FGAN) on April 16, 1947, resulted in more than 500 deaths, more than 3000 personal injuries, and tremendous destruction of and damage to property. It has become known as the Texas City Disaster. On May 5, 1947, two weeks after the disaster, the Republic of France, as owner, and Compagnie Generale Transatlantique (hereinafter referred to as the "French Line"), as agent of the owner or charterer of the vessel, filed a petition in the District Court for the Southern District of New York (Admiralty No. 149–248), pursuant to the Limitation of Liability Act, 46 U.S.C.A. §§ 182–189, praying for exoneration from or limitation of liability for damages resulting from the explosion. That New York limitation proceeding is still pending without trial or other disposition.

On October 17, 1947, within the six-month period prescribed by 46 U.S.C.A. § 185, the Republic of France and the French Line filed the present like petition for exoneration or limitation of liability in the District Court for the Southern District of Texas. A long delay in bringing the latter petition to trial has been occasioned by giving precedence to the suits under the Federal Tort Claims Act, 28 U.S.C. §§ 1346 and 2674, against the United States, the manufacturer of the FGAN. Eventually, this Court held that the United States was not liable, and its decision was affirmed by the Supreme Court. In re Texas City Disaster Litigation, 5 Cir., 1952, 197 F.2d 771, affirmed sub nom. Dalehite v. United States, 1953, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427.

Thereafter, in 1955 Congress enacted the Texas City Relief Act, 69 Stat. 707–709. That Act left insurance underwriters to bear their own losses, but provided for payment of uninsured claims in an amount not exceeding $25,000.00 for any one claim. Pursuant to the provisions of that statute, the United States paid approximately $16,000,000.00 to victims of the disaster and obtained from the recipients assignments of their claims for death, personal injuries and property damages which totalled approximately $70,000,000.00. Thereafter, in May 1957, the United States filed in this proceeding an amended claim based upon these assignments, not for the $16,000,000.00 paid but for approximately $70,000,000.-00, the amount originally asserted by these claimants.

The claims of all persons who made assignments to the United States were dismissed on January 27, 1958. Many persons who had not made assignments to the United States thereafter voluntarily withdrew their claims. The only remaining claimant, other than the United States, is the Texas City Railway Terminal Co. That Company did not file under the Texas City Relief Act because it was not willing to assign an uninsured loss of nearly five million dollars for the $25,-000.00 maximum allowed under the Relief Act. In addition to its assigned claims, the United States filed a claim in the amount of $350,000, as successor to the Reconstruction Finance Corporation, for the loss of goods in a warehouse awaiting loading on another vessel.

Neither of petitioners here was a party to the Dalehite case. The cases are alike to the extent that each arises out of the Texas City Disaster. Sensibly, the trial of the present case was shortened by the introduction by agreement of the testimony in Dalehite of 86 of the total of 133 witnesses in that case. Four of the witnesses in Dalehite again testified in this case, and an additional 25 witnesses testified in open court during thirteen days of trial. So that the findings and decision of the district court in this case were based not only on a large part of the evidence taken in Dalehite, but also on a voluminous record now comprising some 2400 pages of additional testimony. The issues in the two cases, particularly at the

present stage of this limitation proceeding, are not identical.

The findings of fact and conclusions of law of the district court in this case comprise some 43 pages of the printed record, and have been published at 171 F.Supp. 497, 511 and at 1959 A.M.C. 547. Based upon such findings and conclusions, the district court entered an interlocutory decree granting the motion of the petitioners for leave to implead the United States,[1] and denying the petitions for exoneration or limitation.[2] This appeal is from that decree.

■ The only ultimate issue so far determined by the district court is that the petitioners are not entitled to exoneration from or limitation of liability. The merits of the claims or of the impleading petition have not yet been determined. The decree was captioned by the district court as an "Interlocutory Decree," and for purposes of appellate jurisdiction we think that it must be so considered. See La Bourgogne, 1907, 210 U.S. 95, 112, 113, 28 S.Ct. 664, 52 L.Ed. 973. The jurisdiction of this Court of Appeals is that granted by 28 U.S.C. § 1292(a) (3):

"(a) The courts of appeals shall have jurisdiction of appeals from:

&ast; &ast; &ast; &ast; &ast; &ast;

"(3) Interlocutory decrees of such district courts or the judges thereof determining the rights and liabilities of the parties to admiralty cases in which appeals from final decrees are allowed."

■ While interlocutory for purposes of appellate jurisdiction, this decree finally determined the rights and liabilities of the parties by denying the petition for exoneration from or limitation of liability. To that extent, the decree is not subject to the rule usually applicable to interlocutory decrees;[3] viz.: that in reaching its final decree the court may exercise its discretion to re-examine any or all of its findings which form the basis of the interlocutory decree. Instead, except as to the issues which were reserved to be determined on the impleader of the United States (see footnote 1, supra), the present decree is res judicata on the issue of liability for the damages caused by the explosion.[4]

---

1. In this connection, the district court's findings were made "without determining whether the United States may have been at fault in any particular in connection with the manufacture or shipping of the FGAN, or, if so, the effect thereof as to the various types of claims which the United States asserts, if there be such negligence it was not the sole cause of the disaster (as petitioners contend)."

2. The operative parts of the interlocutory decree read:
"Ordered, that the motion of petitioners for leave to implead the United States of America pursuant to the 56th Rule in Admiralty of the United States Supreme Court is hereby granted and allowed; and it is further
"Ordered, Adjudged and Decreed, that said petition of the Republic of France and the Compagnie Generale Transatlantique for exoneration from and/or limitation of liability should be and hereby is denied as to each of said petitioners."

3. See 30 Am.Jur., Judgments, Section 340; 50 C.J.S. Judgments § 650.

4. British Transport Commission v. United States, 1957, 354 U.S. 129, 137, 142, 77 S.Ct. 1103, 1 L.Ed.2d 1234; affirming British Transport Commission v. United States, 4 Cir., 1956, 230 F.2d 139, 144; Algoma, Central & Hudson Bay Ry. Co. v. Great L. T. Corp., 2d Cir., 1936, 86 F.2d 708, 710; Gilmore & Black, The Law of Admiralty, pp. 733, 735; cf. Continental Grain Co. v. Barge FBL–585, 1960, 364 U.S. 19, 25, 80 S.Ct. 1470, 4 L.Ed.2d 1540.
That was substantially the position taken by Government counsel upon oral argument:
"Judge Rives: Assuming that this interlocutory decree should be affirmed, where would you go from there? What would the government have to prove before it got a final decree?
"Mr. Davis: Well, assuming that the interlocutory decree is confirmed, your Honor, it goes back to the District Court for further proceedings.
"Judge Rives: What issues remain open? That's what I'm talking about.
"Mr. Davis: The questions of damages remain open, that is the principal one.
"Judge Rives: What issues as to liability remain open?
"Mr. Davis: What issues as to liability remain open? In respect of the peti-

The district court found that the Grandcamp was unseaworthy in that she was improperly manned and improperly stowed, and that the Grandcamp's unseaworthiness was within the privity and knowledge of the petitioners.[5] The district court found also that the master and the petitioners were guilty of fault and negligence both in the origin of the fire [6] and in the failure to extinguish it in its incipient stage.[7] The court concluded:

> "From the foregoing, it follows that by reason of the fault and negligence of the petitioners, and the unseaworthiness of the vessel, all of which was within the privity and knowledge of petitioners, neither is entitled to exoneration from or limitation of liability under § 183, Title 46 U.S.C.A." [8]

[image: black bar] All of the claims having been filed, and there being no claims for loss of or damage to cargo, it is apparent that the fire statute, 46 U.S.C.A. § 182, is not applicable, and that consideration can be restricted to limitation of liability, 46 U.S.C.A. § 183. It is apparent also that there are no claims to which seaworthiness, not in itself amounting to negligence,[9] can apply.

The findings of fault and negligence which appellants challenge on this appeal are those pertaining to the cause of the fire, and to the procedures that should have been used in attempting to extinguish the fire at its incipiency.[10]

We are relieved from entering into an exhaustive review of this voluminous record to reach a decision as to whether or not those findings of fact are clearly er-

tioners' claim for exoneration and limitation of liability, that is the question that is up before this Court, and that question will be decided now.

"Judge Rives: What I am asking, before you get a judgment for your damages, have you still got to prove liability, and have they got to prove—

"Mr. Davis: Yes, I have to prove liability with respect to the various claims.

"Judge Rives: You have to prove your damages, of course?

"Mr. Davis: That is true, that is part of it.

"Judge Jones: When you go back, are you going to have the burden of showing that somebody on that morning threw a cigarette in the hold and that started the fire?

"Mr. Davis: No, sir, I will not have any such burden, your Honor.

"Judge Cameron: You take the position, or you think the Court findings have settled that finally?

"Mr. Davis: As to the cause of the fire, yes, sir, I think the Court findings have settled that.

\*    \*    \*    \*    \*

"Judge Cameron: You are taking the position that the question of negligence cannot be litigated again, that the Court has already found negligence on the part of this Petitioner, and that is the law of the case?

"Mr. Davis: The question of negligence, insofar as the petitioner is concerned, your Honor, cannot be litigated again. As respects the question of neg-

ligence as far as the United States is concerned, they can litigate that.

"Judge Rives: They can litigate that it was the United States' fault and that they are in no position to recover; do you think that issue is still open?

"Mr. Davis: Certainly that issue is still open. In the final meeting of counsel before the Trial Judge we had no objection to his allowance of the inpleading petition, we have no reserve about meeting that. We did not want to confuse things, and thought we should decide this question first and then we will decide that. Basically that goes to the amount of damages."

5. See Findings numbered 40, 41, 42, 43 and 44 at 171 F.Supp. 509, 510.

6. See particularly Findings 31 and 37–39, 171 F.Supp. 508, 509.

7. See particularly Findings 33–36, 171 F. Supp. 509, and Findings 45–48, 171 F. Supp. 510, 511.

8. Petition of Republic of France, D.C.S.D. Tex.1959, 171 F.Supp. 497, 512.

9. See Mitchell v. Trawler Racer, Inc., 1960, 362 U.S. 539, 542–549, 80 S.Ct. 926, 4 L.Ed.2d 941; Michalic v. Cleveland Tankers, Inc., 1960, 364 U.S. 325, 327–328, 81 S.Ct. 6, 5 L.Ed.2d 20.

10. The evidentiary basis for those findings is adequately disclosed in the full opinion of the district court. See 171 F. Supp. at pages 505–511.

roneous [11] by the following considerations. All of the claims for personal injury, death, and property damage resulted not directly from fire but from explosion. The district court found no more than that the Master could have foreseen the *possibility* of explosion:

> "The Master could and reasonably should have foreseen and anticipated the danger of a disastrous fire, with the *possibility* of explosion, in failing to prevent smoking in the presence or proximity of the FGAN. His negligence in this regard constituted a proximate cause of the fire, the resultant explosion, and the damages which ensued.[8]
>
> "[8] In connection with this finding as to 'foreseeability', it is undoubtedly true that the force and devastating effects of this explosion shocked and surprised the scientific field as well as the transportation industry. What was not generally recognized before Texas City was (a) that ammonium nitrate would cause a detonation of such magnitude in the absence of great confinement and pressure (as within a bomb), and (b), that fire and heat alone would cause such detonation, without an initial or booster detonation; or according to one theory, with such initial detonation resulting from an explosion of accumulated gases, which in turn come from the heated and decomposing ammonium nitrate.
>
> "From the literature and information generally available, I do not believe, that, in the exercise of ordinary care, the Master could have foreseen the probability of an explosion *of this sort*, even in the presence of fire. This finding should be interpreted in this light, and is based on the premises that, as he could foresee danger from fire from his negligent conduct, the 'foreseeability' test

is met, and it is not necessary that he be able to foresee the *extent* of the damage which may ensue." [12]

■ In Texas, as elsewhere, not only proximate causal connection but also the very existence of a duty the breach of which will constitute actionable negligence depends upon reasonable foreseeability of consequences.[13]

The appellants urge as their "principal point" that, "even if unseaworthiness, fault and negligence be conceded, the district court, on the basis of its own findings, erred as a matter of law in holding that the claimed negligence which resulted in fire was the proximate cause of the injuries which resulted from the successive explosions, as its finding as to 'foreseeability' does not meet the standard of Texas law which was recognized by this Court in Texas-New Mexico Railway Company v. Bailey, 203 F.2d 647 (1953)." The appellants emphasize that the district court found that the master could reasonably have foreseen only the *possibility* of explosion, and could not have foreseen "the probability of an explosion of this sort," and urge upon us our statement of the rule of liability in Texas, and the decisions upon which that statement is based:

> "In Texas the test of whether a negligent act or omission is a proximate cause of an injury is whether 'the wrong-doer might by the exercise of ordinary care have foreseen that *some similar injury* might result from the negligence.' Atchison v. Texas & P. Ry. Co., 143 Tex. 466, 186 S.W.2d 228, 232; St. Louis B. & M. Ry. Co. v. Brack, Tex.Civ.App., 102 S.W.2d 261, 273." (Emphasis supplied.)́ Texas-New Mexico Ry. Co. v. Bailey, 5 Cir., 1953, 203 F.2d 647, 649–650.

■ In their reply brief, the appellants concede that the case of Hopson v.

---

11. See McAllister v. United States, 1954, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20; C. J. Dick Towing Co. v. The Leo, 5 Cir., 1953, 202 F.2d 850, 853, 854.

8. See note 8 on page 398.

12. Petition of Republic of France, D.C. S.D.Tex.1959, 171 F.Supp. 497, 508–509.

13. Houston Lighting & Power Co. v. Brooks, Tex.1960, 336 S.W.2d 603; Prosser on Torts, 2d ed., pp. 258, 259.

Gulf Oil Corp., 1951, 150 Tex. 1, 237 S.W. 2d 352, 356, quoted in Chicago, R. I. & P. R. Co. v. Goodson, 5 Cir., 1957, 242 F.2d 203, 207, correctly states the rule as follows:

"It is sufficient that the defendant would reasonably have anticipated consequences or an injury of the general nature of that which ensued."

That rule is emphasized in the more recent opinion of Biggers v. Continental Bus System, 1957, 157 Tex. 351, 303 S.W. 2d 359, 364, 365, which disapproved a holding "that one's negligence cannot be a proximate cause of an injury unless the precise manner or means of the injury resulting from the negligence can be foreseen"; and, instead, held that:

"The true rule is correctly stated in Sullivan v. Flores where it is said that all that is necessary to establish that an actor's negligent act is a proximate cause of an injury is proof that 'As a person of ordinary intelligence and prudence, he should have anticipated the danger to others created by his negligent act, and the rule does not require that he anticipate just how injuries will grow out of that dangerous situation.' [134 Tex. 55, 132 S.W.2d [110], 111.]"

The appellees argue with much force that the district court found that fault or negligence within the privity or knowledge of the owner or owners caused the fire and permitted it to increase in intensity, and that the fire caused the disastrous explosion. The appellees insist that that causal connection is sufficient within the holding of this Court in Chicago, R. I. & P. R. Co. v. Goodson, 5 Cir., 1957, 242 F.2d 203, 207:

"As to the element of foreseeableness which is stressed as being an important element of probable cause in Texas jurisprudence, we think it correct to say that whatever directly results by the operation of natural laws from the unlawful channelling of water onto another's premises is a foreseeable event within the Texas rule."

▉ The fallacy in that chain of argument is that it is only the operation of natural forces theretofore recognized as normal which one is charged with foreseeing.

"*Meaning of 'normal.'* The actor as a reasonable man is required to anticipate and provide against the normal operation of natural forces. And here the word 'normal' is used to describe not only those forces which are constantly and habitually operating but also those forces which operate periodically or with a certain degree of frequency." [14]

"*Abnormal conditions of nature.* The actor is not required to anticipate or provide against conditions of nature or the operation of natural forces which are of so unusual a character that the burden of providing for them would be out of all proportion to the chance of their existence or operation and the risk of harm to others involved in their possible existence or operation. It is therefore not necessary that a particular operation of the natural force be unprecedented. The likelihood of its recurrence may be so slight that in the aggregate the burden of constantly providing against it would be out of all proportion great as compared with the magnitude of the risk involved in the possibility of its recurrence." [15]

▉ While in the present case there was some testimony in addition to the vast amount of evidence before the court in the Texas City Disaster Litigation, the district court still found it "undoubtedly true that the force and devastating effects of this explosion shocked and surprised the scientific field as well as the transportation industry." The district court further found as to ammonium nitrate, which constituted approximately 95% of the FGAN, and which, with the

14. 2 Restatement of Torts, pp. 816–817.

15. Id. at p. 818.

benefit of hindsight, we now know to be the explosive part of the mixture:

"18. Despite its use as a principal ingredient of high explosives, at the time of the disaster ammonium nitrate was not, and is not now, classified as an 'explosive' for transportation purposes by the Interstate Commerce Commission or the Coast Guard. This is true because it was considered that to cause the detonation of ammonium nitrate, an initial shock or 'booster' of considerable magnitude was required. The chances of such an initial or booster detonation being encountered in normal conditions of transportation has always been considered so remote as to be negligible." [16]

Substantially all of the evidence is to the effect that the explosion as distinguished from the fire, could not reasonably have been foreseen. In the opinions of the four judges of our Court constituting the majority in the earlier case, that was pretty clearly stated. Speaking for three of the judges, the writer had said:

"In this case, it can hardly be argued that the dangers of explosion from FGAN were so well known prior to the disaster that judgment or discretion were not called into exercise as to whether it should be manufactured at all and under what safeguards and warnings it should be distributed. Even if some danger were recognized, the necessity of providing means of existence to the devastated areas might have called for the exercise of discretion as to whether to take a 'calculated risk'." [17]

Judge Strum expressed himself more positively:

"This explosion was wholly unprecedented. Prior to this disaster, there had been no known instances of explosions during land transit, while in stowage awaiting export, in the many shiploads previously shipped overseas, nor in this FGAN while part of it was stacked at the Texas City Terminal awaiting loading." [18]

When the case reached the Supreme Court, Mr. Justice Reed, speaking for the Court, said:

" 'There must be knowledge of a danger, not merely possible, but probable,' MacPherson v. Buick Motor Co., 217 N.Y. 382, 389, 111 N.E. 1050, 1053, L.R.A.1916F, 696. Here, nothing so startling was adduced. The entirety of the evidence compels the view that FGAN was a material that former experience showed could be handled safely in the manner it was handled here." [19]

We agree with the view so aptly expressed in the appellants' brief:

" * * * It would be ironic indeed if the United States were permitted to impose liability for these claims on the Republic of France and the French Line in this litigation by claiming now that, unlike the officials and employees of the United States, the officials and employees of the French Government and the master of the Grandcamp should have known that FGAN was a dangerous explosive and that an explosion from fire should reasonably have been anticipated."

It results that the judgment must be reversed and the cause remanded with directions to adjudge that the petitioners are not liable for any claim arising out of or consequent upon the explosion of the steamship Grandcamp.

Reversed and remanded with directions.

HUTCHESON, Circuit Judge (dissenting).

I am unable to agree with the conclusion of the majority that the findings and

---

16. Petition of Republic of France, D.C. S.D.Tex.1959, 171 F.Supp. 497, 503.

17. In re Texas City Disaster Litigation, 5 Cir., 1952, 197 F.2d 771, 778.

18. Id. at page 782.

19. Dalehite v. United States, 1953, 346 U.S. 15, 42, 73 S.Ct. 956, 971, 97 L.Ed. 1427.

conclusions of the district judge are clearly erroneous and his judgment must be reversed. A careful reading and re-reading of the district judge's findings and conclusions as a whole, as they are set out in his opinion, Petition of Republic of France, as Owner and of Compagnie Generale Transatlantique, as Agent, of The Steamship Grandcamp, in a cause of Exoneration from and Limitation of Liability, No. 1870, 171 F.Supp. 497, leaves me with the clear conviction that the findings of fact are well supported by the record, and that the conclusions, that the petitioner is not entitled to limitation, or exoneration from liability, are well supported in law and in fact. I cannot, therefore, concur in the opinion of the majority which rejects the findings and reverses the judgment, but must dissent therefrom.

With deference, it seems to me that the majority opinion has gone astray as a direct result of the fact that two red herrings have been carefully and sedulously drawn by appellants across the trail of true fact and law which the district judge's opinion presents.

The first of these red herrings is undue emphasis on the decisions and opinions of this court and of the Supreme Court in the first Texas City disaster case, 5 Cir., 197 F.2d 771, 346 U.S. 15, 16, 73 S. Ct. 956, 97 L.Ed. 1427. With deference those decisions and opinions have nothing to do with this case either as res judicata or as stare decisis. This case was tried on its own facts as a separate case by a different tribunal and judge and between different parties, and decision in it cannot be controlled or influenced by what occurred in those cases for two reasons: (1) the cases were tried on different facts by a different judge; and (2) the decisions in the appellate courts were based entirely on the view that the suit came within the discretionary provision of the Federal Tort Claims Act and, therefore, could not be maintained against the United States.

The majority, therefore, in my opinion, clearly errs in giving to the opinions in the Dalehite case the effect substantially of res judicata. This is so for two reasons. In the first place, this case was tried and must be determined upon its own evidence, upon which it was, in my opinion, entirely correct for the district judge to find fault and negligence as he did. In the second place, the Dalehite case did not go off on the conclusion of no negligence but on the conclusion that the claim was excepted out of the Act by its discretionary provision.

The second red herring is the contention that damage of the kind occurring here was not, under Texas law, reasonably foreseeable. The contention invades the function and province of the district judge and in effect runs counter to the universally prevailing rule that the particular character of damage done does not have to be foreseen, but it is sufficient if the evidence shows that some damage could reasonably have been foreseen. It is clear to me that the majority opinion errs in giving to the Texas law on foreseeability, as an element of negligence and proximate cause, a meaning and effect different from that actually ascribed to it here and in other jurisdictions.

As the first and leading case in Texas on the question, Texas & P. Ry. v. Bigham, 90 Tex. 223, at page 227, 38 S.W. 162, at page 164, shows, the rule applied in Texas is the same as that applied generally elsewhere. There the Texas Supreme Court, quoting with approval from Milwaukee St. P. Ry. Co. v. Kellogg, 94 U.S. 469, 24 L.Ed 256:

"* * * it is generally held that, in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances."

then went on to say:

"This is probably as accurate a statement of the doctrine as can be given, and is substantially that gen-

erally laid down by the authorities. Upon the doctrine as abstractly stated there is a substantial consensus of opinion. That difficulties arise when we come to apply it to particular cases is not surprising when we reflect, that minds are prone to differ as to such questions; that the degree of probability rises by almost imperceptible gradations; and that the circumstances of such cases are so variant that hardly two can be found which present precisely the same state of fact. Under such circumstances it is hardly to be expected that many cases will not be found, the result of which seemingly do not accord with the doctrine as generally recognized.

"But we are not prepared to hold *that in no case can the original cause of the injury be deemed the proximate cause, where an independent and disconnected agency has supervened and brought about the result. The fact of the intervention of an independent agency, it occurs to us, bears more directly upon the question whether the injury ought, under all the circumstances, to have been foreseen;* and, where this latter fact appears, we think that the original negligent act ought to be deemed actionable. In Seale v. Railway Co., 65 Texas, 274, Chief Justice Willie says: '*If the intervening cause and its probable or reasonable consequences be such as could reasonably have been anticipated by the original wrongdoer, the current of authority seems to be that the connection is not broken.*' It follows, that in our opinion, the question of probable cause ought to depend upon the further question, whether a reasonably prudent man, in view of all the facts, would have anticipated the result—not necessarily *the precise actual injury, but some like injury, produced by similar intervening agencies.*" (Emphasis supplied.)

This court, in Chicago, R. I. & P. Ry. Co. v. Goodson, 242 F.2d 203, by Rives, Tuttle and Jones, with Judge Tuttle the organ of the court, accurately discussed and stated, and correctly applied the Texas doctrine of foreseeability.

It seems clear to me that in this maritime case the district judge correctly understood the principle obtaining and correctly applied it to find liability here. I would affirm the interlocutory decree both on limitation and exoneration of liability, without prejudice, however, to the right of the petitioner, in defense of particular claims for damages, to offer such further evidence in each case bearing on the question of foreseeability as it may desire to offer.

It seems clear to me, also, that the majority has given too much and a wrong effect to the statement of the district judge, in note 3 in his opinion, where, after having stated in the body of the opinion that the master could and should have foreseen the danger of a disastrous fire, said in the note to his opinion at that point that the master could not have foreseen the explosion that occurred. With deference, to the contrary view of the majority, it seems clear to me that the district judge was distinguishing between *what the master, as a natural man and individual, actually knew as distinguished from what, as a representative of the ship and owner, he was required in law and ought to know.* A reading of the opinion as a whole, in which the district judge points out fully his reasons for denying the limitation, shows, I think, in the clearest way that the district judge, in the note, was making this distinction and was not contradicting his finding in the body of the opinion, that the master was charged with the knowledge and ought to have known and foreseen an explosion as a consequence of the situation which was then and there obtaining.

I respectfully dissent.