SHELL OIL COMPANY, Appellant,

v.

Frank MAHLER, Appellee.

No. 16585.

Court of Civil Appeals of Texas.

Fort Worth.

Dec. 11, 1964.

Rehearing Denied Jan. 15, 1965.

Jones, Fillmore, Robinson & Lambert, and Kenneth Ray Farabee, Wichita Falls, for appellant.

Prothro & Sellers, and Oliver Kelley, Wichita Falls, for appellee.

RENFRO, Justice.

Plaintiff Mahler recovered a judgment against defendant Shell Oil Company for the loss of six cows.

Plaintiff was holder of a grazing lease on one hundred acres of land owned by a Mrs. Carson.

Defendant owned an oil and gas lease and had two oil wells on the same land. Carson No. 1 was still producing as of April, 1963; Carson No. 2 was not.

On the morning of April 27, plaintiff found six of his cows dead, laying in a row over a sizzling wire between two poles owned by defendant, one pole being near Carson No. 2.

The jury found that the act of defendant in leaving the power line to No. 2 charged with electricity after the well was disconnected was negligence and a proximate cause of the death of plaintiff's cows.

Defendant, by appropriate points of error, contends there was no evidence to support the findings of negligence and proximate cause.

According to the defendant's Production Foreman for Archer County: The electric power lines to Carson No. 2 were originally installed in December, 1951, and No. 2 was operated on electricity until 1955; at that time a gas engine was installed but the original power lines were left in place; in March, 1959, purchased power was available and No. 2 was again operated by electric pump; No. 2 was temporarily abandoned in December, 1961, and, though not plugged, was abandoned with the Railroad Commission's permission on January 8, 1962; casing was left in the well and the electric power disconnected as it was because of a planned water-flooding program; electric power was disconnected from the well at the top of a power pole; disconnecting electrical power at the top of the pole is considered safe and acceptable way of temporarily disconnecting a pumping unit installation.

All seem to be in accord that "The cause for the wire falling was due to a lightning bolt striking either the top phase or the second phase, causing the dead end to burn and to break loose and to fall to the ground." At least no witness disputed such conclusion.

Plaintiff's witness Roberts testified: "I have never seen lightning take any particular spot. It will just hit anywhere. * * * It is attracted to the power lines."

There was no evidence of probative force that lightning is more apt to strike a charged wire than a "cold" wire.

During the night of April 26 there had been a thunderstorm accompanied by lightning.

The only negligence issue submitted to the jury was whether defendant was negligent in leaving the line to No. 2 charged with electricity after production ceased.

There was no evidence of defects, improper equipment, failure to inspect, etc.

Defendant was not charged with violation of any statutory requirement or regulation.

Plaintiff relies on Texas Power & Light Co. v. Culwell, 34 S.W.2d 820 (Tex.Comm. App., 1931), wherein it is held: "Even if it be conceded the radio wire was cause to break by being struck by lightning, * * * (defendant) cannot escape liability if its negligence was a contributing cause to the injury * * *. The intervention of an unforeseen and unexpected cause is not sufficient to relieve a wrongdoer from consequences of negligence, if such negligence directly and proximately co-operates with the independent cause in the resulting injury." The court, in the above case, however, continues: "Here the undisputed evidence shows that it was both practicable and feasible to insulate the electric wire so that the current would not escape therefrom in the event the radio wire should come in contact therewith."

In the instant case there is no evidence that anything the defendant did or failed to do amounted to negligence.

While the jury was not bound by defendant's evidence that the electrical power was disconnected in a safe and acceptable way, there is no evidence to the contrary.

■ We think the holding in West Texas Utilities Co. v. Dunlap, 175 S.W.2d 749 (Eastland Civ.App., 1943, no writ hist.), is applicable and controlling in the instant case. The court said: "The question is: Do the facts alone, that appellant was not at the time supplying electricity to Baird Refining Company and that it could, with little expense, have shut off the current at a point outside of the Baird Refining Company's property line, constitute the failure to do so negligence? We do not think so. The authorities relied upon, with one possible exception, imply, if they do not express the fact, that a new or greater degree of danger resulted from the condition of the disconnected wires. In this case there is no evidence tending to show that the line, charged as it was, was any more dangerous to anyone after the discontinuance of service than it had been at all times during the ten or eleven years previously while supplying electricity to the refinery. Then whence springs the duty, if any, involved? As said in connection with another question, no statute imposes such a duty. Was the hazard to the deceased any greater or different in character after the discontinuance of service than it was before? There was no evidence of it. It is elementary that absent a duty there can be no negligence. Independent Eastern Torpedo Co. v. Carter, Tex.Civ.App., 131 S.W.2d 125, and the authorities there collated.

■ "If facts giving rise to a greater or different hazard, or danger, resulting from failure to cut off the current were absent, as we conclude, then it is immaterial what considerations may have motivated appellant in not cutting off the current."

There was no evidence of probative force that the hazard created by the wire in question was any greater after the discontinuance of production on Carson No. 2 than before.

Although the Dunlap case has no writ history, it was cited with approval by the Supreme Court in Houston Lighting & Power Company v. Brooks, 161 Tex. 32, 336 S.W.2d 603 (1960), following the statement: "We hold that the accident and injuries complained of were not in a legal sense foreseeable consequences of the acts or omissions charged to petitioner, so whether we measure the duty by the measuring stick of foreseeability and say that the petitioner breached no duty it owed respondent and was therefore not negligent, or whether we say in any event petitioner's conduct was not in any of the respects complained of a proximate cause of the unforeseeable consequences, we arrive at the conclusion that liability was not established."

■ As did the Supreme Court in the Brooks case, we conclude liability was not established.

The judgment of the trial court is reversed and judgment here rendered for defendant.

Reversed and rendered.