**Opinion issued September 26, 2013**



In The

# Court of Appeals

For The

# First District of Texas

———————————————

## NO. 01-10-01123-CV

———————————————

**ONCOR ELECTRIC DELIVERY COMPANY, LLC, Appellant**

**V.**

**MARCO MURILLO , Appellee**

**On Appeal from the 165th District Court**
**Harris County, Texas**
**Trial Court Case No. 2008-64374**

## DISSENTING OPINION

The trial court erred in submitting a general negligence charge to the jury with respect to Oncor, an electricity-carrier defendant. Oncor's position in this case is unlike AAA (Murillo's employer), Basic Industries, Inc. (the project manager) or even Hunt Realty Investments, Inc. (the property developer)—who

were also found to have been negligent. Oncor did not control Murillo's salvage work, nor was Oncor's negligence, found by the jury, based on Oncor's contemporaneous negligent acts. Rather, the case against Oncor was that it failed to adequately warn about a dangerous condition (energized transformers in an electrical easement) and failed to exercise reasonable care to make its premises safe (by reasonably protecting others from contact with energized transformers in its electrical easement). At the trial court charge conference, Oncor objected that there was no evidence to support a general negligence claim against it, and Oncor adopted Basic's request that the trial court instruct the jury on a premises-liability theory of negligence rather than a negligent activity.

Because an existing energized transformer within an electrical easement is a condition of the premises, and not a contemporaneous negligent activity, the trial court did not submit the proper legal duty with respect to Oncor in the jury charge; it thus erred in rendering judgment against Oncor on a negligence claim. We should reverse the case.

## I. Defining a premises owner or occupant for claims in negligence.

Oncor (also referred to as TXU Electric Delivery Company in the testimony and trial exhibits) adduced evidence that the transformers stood on its electrical utility easement, an easement filed in the real property records of Dallas County in 1971 and initially granted to Dallas Power & Light Company. The easement

granted Oncor use of the property within its bounds "for the construction, maintenance, and operation of an electrical transmission." Oncor exercised this right in constructing the cement pads and in placing and operating transformers on them.

Murillo responds that Oncor, as an easement holder, does not own the property on which the transformers stood, and therefore, it could not be held liable under a premises-liability theory. *See Marcus Cable Assocs. v. Krohn*, 90 S.W.3d 697, 700 (Tex. 2002) (explaining that easement is a "non-possessory interest that authorizes its holder to use the property for only particular purposes.") (citing RESTATEMENT (THIRD) OF PROPERTY (SERVITUDES) § 1.2 cmt. d). Thus, Murillo argues, Oncor cannot rely on the more limited scope of duty applicable to a premises owner not actively engaged in any activity.

An easement holder who controls or occupies the easement, however, may be liable in tort as an occupier of the property. The question of legal title for real property purposes does not define whether a possessor of property has a legal duty to answer in tort for premises defects it creates. For tort claims like this one, a "possessor of land" is different than in the property rights context. A "possessor of land" for the purposes of defining a legal duty in tort is:

3

(a) a person who is in occupation of the land with intent to control it, or,

(b) a person who has been in occupation of land with intent to control it, if no other person has subsequently occupied it with intent to control it, or

(c) a person who is entitled to immediate occupation of the land, if no other person is in possession under Clauses (a) and (b).

RESTATEMENT (SECOND) TORTS § 328E (1965). "The important thing in the law of torts is the possession, and not whether it is or is not rightful as between the possessor and some third person." *Id.* cmt. a.

Accordingly, "[a] premises-liability defendant may be held liable for a dangerous condition on the property if it 'assum[ed] control over and responsibility for the premises,' even if it did not own or physically occupy the property." *Cnty. of Cameron v. Brown*, 80 S.W.3d 549, 556 (Tex. 2002) (concluding that, for purposes of premises-liability claim, county assumed sufficient control over state-owned causeway because it had maintenance contract with state that included responsibilities over causeway's streetlight system) (quoting *City of Denton v. Van Page*, 701 S.W.2d 831, 835 (Tex. 1986)). "The relevant inquiry is whether the defendant assumed sufficient control over the part of the premises that presented the alleged danger so that the defendant had the responsibility to remedy it." *Id.*; *see City of Houston v. Cogburn*, No. 01-11-00318-CV, 2013 WL 1136553, at *5 (Tex. App.—Houston [1st Dist.] Mar. 19, 2013, no pet.) (mem. op.) (holding that plaintiff adequately pleaded, for purposes of premises-liability claim, that city

4

exercised control over site where injury occurred because of city's right of way over area between parking spaces and meters that customers crossed to make payment or return to vehicle); *Jenkins v. Occid. Chem. Corp.*, No. 01-09-01140-CV, 2011 WL 6046527, at *11-12 (Tex. App.—Houston [1st Dist.] Nov. 17, 2011, no pet.) (prior owner, which constructed flawed acid-addition system that caused plaintiff's injury, created dangerous condition; jury found that acid-addition system was improvement to real property); *Entergy Gulf States, Inc. v. Isom*, 143 S.W.3d 486, 489–90 (Tex. App.—Beaumont 2004, pet. denied) (analyzing case in which injury occurred from energized wire on utility company's right of way as premises-liability claim); *Roberts v. Friendswood Dev. Co.*, 886 S.W.2d 363, 367 (Tex. App.—Houston [1st Dist.] 1994, writ denied) (observing that easement holder has duty to use ordinary care regarding use and maintenance of easement); *see also Kibbons v. Union Elec. Co.*, 823 S.W.2d 485 (Mo. 1992) (property owner owed no duty to construction worker who was electrocuted when truck ran into uninsulated 7200-volt power line over property; electricity provider held easement in which it placed utility pole carrying and had exclusive control and thus duty to inspect and maintain lines); *Green v. Duke Power Co.*, 290 S.E.2d 593, 598 (N.C. 1982) (defendant power company, as holder of easement allowing it to maintain ground-level transformer on property owned by city housing authority, was solely liable for injury that occurred when plaintiff child touched exposed and energized portion

5

of unlocked transformer); *Reyna v. Ayco Dev. Corp.*, 788 S.W.2d 722, 724 (Tex. App.—Austin 1990, writ denied) (where city, as holder of easement, had exclusive use and control of easement property, apartment complex property owner had no control over and thus no duty to repair open and energized electrical switching cabinet that caused injury to child tenant).

Oncor undisputedly controlled the transformers on the easement as of the date of Murillo's injury, and it introduced evidence that it was the easement holder; it follows that Oncor had some control over the premises on that date. As the easement holder and the party that owned and controlled the transformers, Oncor qualified as an occupier of the premises for the purposes of creating a duty in tort.

## II. A premises occupant's scope of liability: negligent activity vs. negligently furnishing a dangerous condition.

Texas courts have consistently recognized that negligent-activity claims and premises-defect claims are independent theories of recovery, and a finding of one will not suffice to create liability for the other. *See Gen. Elec. Co. v. Moritz*, 257 S.W.3d 211, 214–15 (Tex. 2008) (distinguishing between negligent-activity claim and premises-condition claim); *Clayton W. Williams, Jr., Inc. v. Olivo*, 952 S.W.2d 523, 527 (Tex. 1997) (noting "two types of negligence in failing to keep the premises safe: that arising from an activity on the premises, and that arising from a premises defect"); *see also Mayer v. Willowbrook Plaza Ltd. P'ship*, 278 S.W.3d

901, 909 (Tex. App.—Houston [14th Dist.] 2009, no pet.) ("[n]egligent activity and premises defect are independent theories of recovery").

Although "[t]he lines between negligent activity and premises liability are sometimes unclear, negligent activity encompasses a malfeasance theory based on affirmative, contemporaneous conduct by the owner that caused the injury, while premises liability encompasses a nonfeasance theory, based on the owner's failure to take measures to make the property safe." *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 776 (Tex. 2010). A finding of liability for a negligent-activity theory "requires that the person have been injured by or as a contemporaneous result of the activity itself rather than by a condition created by the activity." *Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex. 1992); *see Olivo*, 952 S.W.2d at 527. In contrast, to assess liability in negligence for a premises defect, an injury must occur as a result of a dangerous condition that the defendant knows or should have known of, and the defendant fails to reasonably warn of the condition or take reasonable measures to remedy it. *Mayer v. Willowbrook Plaza Ltd. P'ship*, 278 S.W.3d 901, 909 (Tex. App. [14th Dist.] 2009, no pet.).

Both kinds of negligence claims require proof of the existence of a legal duty owed by the defendant to the plaintiff, a breach of that duty, and damages proximately resulting from the breach. *See W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005); *West v. SMG*, 318 S.W.3d 430, 438 (Tex. App.—Houston

7

[1st Dist.] 2010, no pet.). Under a premises defect theory, however, the scope of the duty is more singularly defined: the plaintiff must establish that (1) the premises occupier had actual or constructive knowledge of the complained-of condition; and (2) the complained-of condition posed an unreasonable risk of harm. *Clayton W. Williams, Jr., Inc. v. Olivo*, 952 S.W.2d 523, 529 (Tex. 1997) (citing *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292 (Tex. 1983)). A claim for an injury that resulted in a premises defect cannot stand without jury findings and proof to support these specific elements. *See id.*

It is undisputed that Oncor's last activity with respect to the transformer was on June 11 or 12. At that time—a month before Murillo's injury—Oncor read the nearby temporary meter, removed it, and closed the temporary electrical account. On June 7, Scott Shipp requested that Oncor "please cancel the Continuing Service Agreements (CSA's) for the following apartments as soon as possible due to their scheduled demolition: Windfall Apartments." Oncor responded on June 11: "Thank you for your fax. Per your request, CSA [for the Windfall Apartments] ha[s] been cancelled for you effective 6/11/07. If you need any of these properties turned off, please provide a list of those addresses or account numbers." Work records dated June 12 indicate that this work was done.

At trial, Murillo argued that Oncor caused his injuries when it disconnected the temporary service to the Windfall Apartments, but did not de-energize the

8

transformer on Pad B, as Oncor had done at an earlier point with Pad A. On appeal, in contrast, Murillo faults Oncor for leaving the transformer energized when Scott Shipp had closed the temporary electricity account. But Murillo points to no evidence that Oncor was obligated to de-energize its transformer, that it had been instructed to do so, or that anyone from Oncor had represented that it had done so. According to Murillo, the Oncor employees never spoke to anyone on the AAA crew. On the day of the accident, although Murillo had noticed Oncor trucks parked on the street outside the construction fence about 500 feet away, no Oncor employees were present at the work site. Only AAA employees were present.

Oncor did not supervise or control Murillo's work at the jobsite or verify to anyone associated with the demolition work that the Pad B transformer was either energized or de-energized. Basic hired AAA, Murillo's employer, to demolish one part of the project—the part associated with the Windfall Apartments. Shipp told all contractors at the site that the Oncor had transformers located on the property, and that these transformers "were to be left alone and treated as energized." The transformers were not within the scope of any demolition work. Shipp specifically informed Leo Gomez, AAA's owner and Murillo's worksite supervisor, to consider the transformers to be energized. No one at trial testified that Oncor had represented to anyone they were not.

9

Each transformer box had an exterior door and an interior door, each secured with locks. The transformer boxes conspicuously posted safety warnings. On the exterior doors, a sign read:

**WARNING**
Energized Electrical Equipment Inside
**KEEP OUT**
MAY SHOCK, BURN, OR CAUSE DEATH
If Unlocked or Open
Immediately Call
Your TXU Office at
[toll-free number]

On the interior doors, a sign read:

**DANGER**
**KEEP AWAY**
IMMEDIATELY CALL
DALLAS POWER & LIGHT CO.
[telephone number]
Contact with certain parts
within this box can cause
electric shock and death
**KEEP AWAY**

The signs included illustrations of a figure shocked by a dangerous-looking caricature of electrical voltage.

Oncor's failure to turn off an existing energized electrical transformer was not contemporaneous with Murillo's injury, and is insufficient to create liability for general negligence. Without evidence of contemporaneous conduct, Murillo's claim against Oncor is "a nonfeasance theory, based on [Oncor's] failure to take measures to make the property safe," and not an activity "based on affirmative,

10

contemporaneous conduct by [Oncor] that caused the injury." *See Del Lago Partners,* 307 S.W.3d at 776. Oncor did not energize the transformer while Murillo worked, or tell anyone that the transformer had been switched off, when in fact it was not. Absent some affirmative act, no general duty to recognize and prevent electrical contact during a construction project arises against an electricity provider. *See Houston Lighting & Power v. Brooks,* 336 S.W.2d 603, 606 (Tex. 1960) (holding that, where electricity supplier had its employees on construction site from time to time in connection with supplying temporary electricity, any knowledge supplier's employees had of building construction was incidental to supplying electricity; thus, construction worker who was injured when he contacted live high-voltage electrical transmission lines "wholly failed to establish any reason" why electricity supplier should have foreseen injury, and "no duty arises to act to prevent such unanticipated injury").

Murillo identifies no other negligent act with respect to Oncor. Neither Murillo nor anyone else testified that Oncor authorized Gomez or the demolition crew to enter its transformer boxes. Murillo stated that he saw Oncor trucks parked on Rambler Street—the street that the Windfall Apartments faced—in the two days before the incident, about 500 feet away, but he never interacted with an Oncor employee. The evidence raises no reasonable inference that Oncor engaged in a contemporaneous act of negligence that caused Murillo's injury. *See Brooks,*

11

336 S.W.2d at 606 (power company employees in the vicinity of construction project creates no duty in general negligence to project's construction workers). Murillo was injured by the activities of others on the premises, coupled with Oncor's energized transformers. Murillo's non-feasance liability theory, that Oncor did not de-energize the transformers a month earlier, must be evaluated in light of premises-liability requirements that consider the risk of harm, warnings, and reasonable efforts to reduce or eliminate the danger. *Compare Tex. Dep't of Transp. v. Ramming,* 861 SW 2d 460, 465–66 (Tex. App.—Houston [14th Dist.] 1993, writ denied) (car accident that occurred at intersection where employee had turned off traffic signal during ongoing repair resulted from negligent activity) *with Kroger Co. v. Persley*, 261 S.W.3d 316, 320–21 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (pleadings did not present negligent-activity claim where plaintiff slipped on water near freezer display, evidence showed that freezer's stocker had left the area at least fifteen minutes before, and plaintiff admitted she did not see stocker near display when she slipped); *see also Brooks,* 336 S.W. 2d at 603 (electrical supplier owed no duty to construction worker who was injured by contact with live high-voltage electrical transmission lines on construction site).

The record lacks evidence that Oncor engaged in any negligent activity contemporaneous with Murillo's injury at the jobsite, or that Oncor controlled the details of Murillo's work, or that it had a hand in salvaging cable or that it

12

authorized entry into the transformers it operated within its electrical easement, or that it represented to anyone the status of its transformer as de-energized. Without such evidence, Oncor's duty was, at most, that of an occupier of the premises. As a premises defendant, Oncor was entitled to standard jury instructions that would have defined the scope of Oncor's duty to Murillo in light of the warnings to those who came near its energized transformers and the efforts Oncor made to keep its premises safe.

## Conclusion

The jury's findings in general negligence, rather than premises liability, do not support a judgment against Oncor. *Olivo*, 952 S.W.2d at 529–30 (submission under negligent-activity theory did not address essential premises defect elements about knowledge and risk of harm and thus could not support deemed findings under TEX. R. CIV. P. 279). Because we should sustain Oncor's appellate challenge, I respectfully dissent from our judgment affirming the trial court.


Jane Bland
Justice

Panel consists of Justices Keyes, Bland, and Sharp.

13